UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

REDACTED
VERSION

UNITED STATES OF AMERICA

v.                                    CRIMINAL ACTION NOS. 2:05-00107-01
                                                          2:05-00107-02

GEORGE LECCO and
VALERIE FRIEND

REDACTED MEMORANDUM OPINION AND ORDER

Pending are (1) defendant George Lecco's motion to
sever his trial from that of co-defendant Valerie Friend, filed
June 26, 2006, (2) defendant Friend's notice regarding severance
and her objections to the government's proposed redaction of her
alleged statements, filed June 22, 2006, and (3) defendant
Friend's motion for a separate trial, filed November 27, 2006.

I.

A.   Chronology of Defendant and Witness Statements

Carla Collins was murdered on or about April 16, 2005,
at an abandoned trailer on Double Camp Road, Newtown, Mingo

County.  Her body was discovered June 17, 2005.  On June 27, 2005, Friend made statements to law enforcement, as detailed below.  Blankenship accompanied Friend during this first contact with law enforcement.  After suffering what the officers perceived to be a seizure, Blankenship agreed substantially with Friend's account.  First Lieutenant Cliff Akers memorialized the discussion in a June 27, 2005, memorandum.

On June 28, 2005, Friend repeated her account to Trooper Anthony Perdue and First Sergeant Dave Nelson.  The statement was reduced to writing and signed the same day by Friend.  At some time between June 28 and July 12, 2005, Friend repeated her story to others, namely, attorney Mike Clifford, Wanda Carney, and Betty Jarvis, who taped Friend's comments.  Blankenship was also present at the time.

On July 6, 2005, Blankenship had repeated essentially the same story to First Lieutenant Akers, who recorded the conversation and recounted it in a memorandum.  On July 12, 2005, however, Blankenship gave a different statement, implicating Friend and Patricia ("Pat") Burton in the murder.  Blankenship additionally indicated that only she, Burton, and Friend had been at the scene at the time Collins was murdered.

2

Pat Burton also spoke to law enforcement about Collins'
murder.  On June 28, 2005, Burton told First Sergeant Nelson and
Trooper Perdue that Friend murdered Collins for Lecco, because he
suspected Collins' cooperation with law enforcement.  Burton
stated she had been present when Friend shot Collins and when
Friend thereafter beat Collins with a rock.  Burton was arrested
that night on a state charge for accessory to murder.  On July 7,
2005, Burton's lawyer, Charles West, told First Lieutenant Akers
and Mingo County Prosecutor Michael Sparks that his client wanted
to reveal certain "details" to law enforcement.  Among the
details revealed by attorney West, according to a memorandum
later written by First Lieutenant Akers, was that Burton saw
Lecco shoot Collins.

On August 2, 2005, Burton told First Lieutenant Akers
that, on the night of the murder, Lecco and three other people
were "partying" at Lecco's restaurant, the Pizza Plus.  The next
day, in a proffer session attended by prosecutors, law
enforcement, Burton and her lawyer, Burton recounted that Friend
had shot Collins using a pistol Burton had given her.  Burton
stated that Lecco had asked her and Friend to kill Collins in
exchange for money and cocaine.  She also noted that Lecco gave
her the pistol that Friend used to shoot Collins.

3

B.   Charges Arising out of the Collins Murder


        A number of charges were filed relating to Collins'
death and the events surrounding it.  For present purposes,
Patricia Burton was ultimately charged with Collins' murder in a
superseding indictment on November 15, 2005.  After executing a
plea agreement, Burton pled guilty to two crimes, conspiracy in
violation of 21 U.S.C. § 846, and use of a firearm during and in
relation to conspiracy, resulting in the death of another person,
in violation of 18 U.S.C. §§ 924(c) and (j).

        On October 18, 2005, the government filed an eight-
count, second superseding indictment accusing Friend and Lecco of
(1) controlled substance offenses (21 U.S.C. §§ 846 and
841(a)(1)), (2) murder with a firearm during and in relation to a
cocaine conspiracy (18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1)), (3)
killing a person for aiding a federal investigation (18 U.S.C. §
1121(a)(2)), and (4) conspiracy to destroy and conceal evidence
(18 U.S.C. § 1512(k)).  The government attached special
conditions pursuant to 18 U.S.C. §§ 3591 and 3592.  On May 15,
2006, the United States Attorney filed his notice of intent to
seek the death penalty as to both defendants.

4

On May 31, 2006, the government provided the following notice to the defendants:

(Letter from government to defendants (May 31, 2006)).

(Interview (emphasis added)).   As noted, the government never intended to introduce a hard copy of the Interview, but only to have its redacted substance at the ready, if necessary, for use by First Lieutenant Akers and/or Investigator Gilman during their testimony.

(Statement).

As initially proffered by the government, both the Statement and the Interview were heavily redacted.  Of the 120 lines contained in the Interview, 98 were either complete or partial redactions or use limitations.  Of the 142 lines making up the substance of the Statement, 111 were either completely or partially redacted.

Friend initially did not move for severance.  She objected, however, to the substance of the government's redactions, stating (1) the proposed redactions violated the rule of completeness by providing the jury only part of what she related to law enforcement, (2) the proposed redactions transform an exculpatory statement (defendant Lecco murdered Carla Collins)

5

into an inculpatory statement, placing defendant Friend with the victim, at the murder scene, shortly before leaving without her, with no explanation concerning what transpired,[1] (3) the Statement transforms two trips to Double Camp into just one trip, making defendant Friend's alleged statement falsely appear consistent with the version apparently given by some government witnesses,[2] and (4) the redacted version significantly undermines defendant Friend's case in mitigation, preventing her from using the entirety of her utterances to illustrate defendant Lecco's paramount role and domination.

Defendant Lecco contended as follows: (1) defendant Friend is entitled to admission of her entire statement or none of it, (2) absent the entire statement, the government's case against defendant Lecco consists of circumstantial and indirect evidence, making it impossible for a jury to give separate consideration of the defendants' cases, based upon confusedly intertwined evidence and theories of the case, and (3) defendant

---

[1]Defendant Friend contends that "[i]mplicit in this misleading, redacted version is that Valerie Friend participated in killing Carla Collins when Valerie Friend allegedly stated the opposite."  (Friend Notice at 1).

[2]The government attempts to correct this difficulty by allowing Akers or Gilman, if asked during their direct testimony, to testify concerning the second trip to Double Camp.  This accommodation would appear to resolve defendant Friend's concern.

Lecco's Sixth Amendment confrontation rights are at odds with having the entire statement offered into evidence.

The government then responded as follows: (1) the redactions to the Statement and limited use of the Interview satisfied defendant Lecco's <u>Bruton</u> concerns and will not mislead the jury as to defendant Friend's involvement, (2) defendant Friend's exculpatory utterances in her Statement are hearsay and may not be admitted at trial under the rule of completeness, (3) the rule of completeness does not apply to oral statements like those defendant Friend gave during the Interview, (4) no redacted portion of the Statement or Interview is necessary to explain the remainder, and (5) relative to the penalty phase, defendant Friend's version of events are not in mitigation but are simply an attempt to absolve herself completely of any role in the murder.

As merged, the substance of defendants' respective replies are as follows: (1) "the redacted portions (i.e. Friend witnesses George Lecco murder Carla Collins) are clearly necessary to explain the statement that Valerie Friend and others went to Double Camp Hollow with Carla Collins the evening that Carla Collins was killed and returned without her" (Friend Reply at 1), (2) the redaction eliminates the purpose of the trip,

7

namely to take Collins to meet defendant Lecco, (3) the
redactions have transformed the Statement and Interview from
exculpatory declarations into inculpatory confessions, (4) the
redacted portions are an integral part of the Statement and
Interview, (5) the rule of completeness requires introduction of
the Statement and the contents of the Interview in their
entirety, (6) severance is required based upon the antagonistic
nature of the defendants' defenses, and (7) defendant Friend's
exculpatory statements are admissible in the penalty phase from a
mitigation standpoint because they demonstrate defendant Lecco's
control and domination of defendant Friend and others present.[3]

On November 16, 2006, the government filed a
supplemental response providing as follows:

> The United States has decided not to offer
> Friend's written statement of June 28, 2005, in its
> case-in-chief.
>
> Regarding Friend's oral statements to . . . [First
> Lieutenant] Akers and . . . Investigator . . . Gilman
> in the afternoon of June 27, 2005, . . . the United

---

[3]On September 18, 2006, defendant Lecco filed an additional
brief contending severance was appropriate based, inter alia,
upon the fact that in a joint penalty phase an "aggravating
factor advanced by the government . . . becomes a mitigating
factor for the other . . . .  In this case neither of the co-
defendants would be able to present damaging, and possibly
damning, evidence against the other, evidence not discovered or
not discoverable by the prosecution."  (Def. Lecco's Supp. Memo.
in Supp. at 2).

States proposes to introduce only very limited
testimony of . . . [First] Lt. Akers.  The testimony
would be in response to a question about what, if
anything, did Friend say happened on the Monday after
Carla Collins had been murdered, April 18, 2005.  The
expected testimony, as reflected on page 4 (Bates 247)
of . . . [First Lieutenant] Akers' memorandum, is: ". .
. Patricia came to her with $1,000.00 and an '8 ball'
of cocaine for her."  Further, if Friend insists that
out of fairness her explanation for the money and drugs
should also be presented to the jury, the United States
would propose to have . . . [First Lieutenant] testify
to the gist of the follow-on sentences from page 4 of .
. . [First Lieutenant] Akers' memorandum.  However, in
order to comply strictly with the dictates of <u>Bruton v.
United States</u>, 391 U.S. 123 (1968), and to prevent any
inadvertent verbal slip from the witness, the United
States would propose that it be allowed to ask leading
questions, as follows:

> Q: Ms. Friend then indicated that, according
> to Pat Burton, "JF" Smith was to be done in,
> is that right?

> Q: And Ms. Friend said that, according to Pat
> Burton, the money and the drugs - the $1,000
> and the cocaine - were to lure "JF" to Double
> Camp to party, right?

> Q: Ms. Friend then indicated that she refused
> to go, is that right?

> This would be all that the United States proposes
> to offer from the statements reflected in . . . [First]
> Lt. Akers' memorandum.

(Govt.'s Supp. Resp. at 1-2).  The government subsequently made

clear that it was not averse, if necessary, to abandoning any

mention of the Interview as well if a contrary course would

result in severance.  (Govt.'s Resp. to Def. Lecco's Reply at 7

("If the United States has to choose between having a joint

trial, without introducing any portion of any of Friend's statements in its case-in-chief, and having separate trials while being allowed to introduce some or all of Friend's statements at her trial, then the United States will opt for a joint trial. The United States wants to use the statement against Friend, and believes it is on firm ground to do so, but not at the very high cost of having to try this case twice.").

Following this apparently significant concession, Friend moved for a separate trial, contending as follows: (1) the essential redacted portion, (i.e., Friend witnesses George Lecco murder Carla Collins) is clearly necessary to explain why Pat Burton came to Friend with money and drugs and the news that "J.F." Smith was to be killed up at Double Camp . . . . transform[ing] an exculpatory statement into an 'admission[;]'" (2) the redaction transforms a witness statement into an implication that Friend was involved in the Collins murder and was paid for it, (3) the rule of completeness requires the admission of the substance of the Interview in its entirety, and (4) Friend could not at a joint trial confront Blankenship or Burton about their conflicting versions of events.[4]

---

[4]Friend could, of course, attempt to confront both of these government witnesses concerning their conflicting versions of events.  As noted by the government "A skilled lawyer should be able to, and indeed should be required to, cross-examine
(continued...)

Defendant Lecco likewise objected to the government's proposed concession, asserting as follows: (1) a <u>Bruton</u> violation persists because Lecco is prevented from cross examining Friend, and (2) Lecco will not be permitted to challenge Friend's statement concerning the "8 ball" and $1,000, which implicitly identifies him as the source of the contraband and money.

II.

A.   General Standards Governing Severance

Taking account of the government's recent concession, namely, that it abandons any intention of offering the Statement or any portion of the Interview at trial, save the excerpt noting Pat Burton's offer to Friend of $1,000 and an 8 ball of cocaine, defendants' arguments in favor of severance distill to four

---

[4](...continued)
Blankenship without describing who else blamed Lecco because that fact is irrelevant.  This is particularly the case where Blankenship on one occasion -- July 6, 2005 -- made the inconsistent statement <u>by herself, without adopting what Friend or anyone else said</u>."  (Govt.'s Resp. to Defendant Friend's Mot. for a Sep. Trial at 8) (emphasis in original).  The government additionally concedes that Blankenship's prior statements do not qualify as hearsay and that they would not run afoul of <u>Crawford v. Washington</u>, 541 U.S. 36, 59 n.9 (2004).

contentions.  First, they attempt to demonstrate the putatively irreconcilable conflict between defendant Lecco's <u>Bruton</u> rights and defendant Friend's reliance upon the rule of completeness. Second, they assert their defenses are antagonistic.  Third, defendant Friend contends that should she be convicted, her case in mitigation would be prejudiced by continued redaction of her statements.  Fourth, defendant Lecco contends generally that a joint penalty phase would be unworkable and constitutionally suspect in view of the fact that (1) each defendant would take on the role of a second prosecutor in identifying unnoticed aggravating factors as to the other, or, alternatively (2) each defendant would impermissibly be required to avoid the introduction of previously unmentioned, damaging evidence not uncovered by the government but presumably relevant to mitigation or aggravation.  Prior to analyzing those contentions, the court discusses the law applicable to the first two arguments.

### 1.  General Severance Considerations

Federal Rule of Criminal Procedure 8(b) provides that "defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense

or offenses."  Fed. R. Crim. P. 8(b).  Our court of appeals has
observed that "[b]arring special circumstances, individuals
indicted together should be tried together."  <u>United States v.
Brugman</u>, 655 F.2d 540, 542 (4th Cir. 1981).

There is a presumption that co-defendants will be tried
jointly, and the presumption applies equally to conspiracy cases.
<u>Zafiro v. United States</u>, 506 U.S. 534, 537-38 (1993); <u>United
States v. Najjar</u>, 300 F.3d 466, 473 (4th Cir. 2002); <u>United
States v. Akinkoye</u>, 185 F.3d 192, 197 (4th Cir. 1999).  Indeed,
the court of appeals has observed the presumption is particularly
<u>apropos</u> in the conspiracy setting.  <u>United States v. Parodi</u>, 703
F.2d 768, 779 (4th Cir. 1983); <u>United States v. Reavis</u>, 48 F.3d
763, 767 (4th Cir. 1995)(stating "the well-established principle
that defendants who are charged in the same criminal conspiracy
should be tried together.").

Rule 14(a), Federal Rules of Criminal Procedure,
however, permits severance "[i]f the joinder . . . appears to
prejudice a defendant . . . ."  Fed. R. Crim. Proc. 14(a).  In
making the severance determination generally, the focus is on
whether the failure to sever will result in the compromise of a
specific trial right of one of the defendants or prevent the jury
from making a reliable judgment concerning guilt or innocence.

13

Zafiro, 506 U.S. at 539; Najjar, 300 F.3d at 473.  The mere fact
that severance might result in a better chance of acquittal, or
that the evidence against one defendant is stronger or more
inflammatory than as to another, is an insufficient basis for
ordering separate trials.  See Najjar, 300 F.3d at 473; United
States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001); Reavis,
48 F.3d at 767; Akinkoye, 185 F.3d at 197.

### 2.  Bruton and the Rule of Completeness

Severance is often requested when the government seeks
to introduce into evidence at a joint trial the confession of a
defendant that implicates as well his or her co-defendant.  At
its most general level, Bruton v. United States, 391 U.S. 123
(1968), teaches that a Sixth Amendment violation is visited upon
a defendant when (1) his non-testifying co-defendant's confession
is offered at trial, and (2) it names the defendant as a
participant in the crimes under consideration.  Id. at 135-36;
United States v. Workman, 860 F.2d 140, 144 (4th Cir. 1988).

At the same time, the Supreme Court has observed as
follows:

It would impair both the efficiency and the fairness of
the criminal justice system to require, in all these

**14**

cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand . . . . Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Richardson v. Marsh, 481 U.S. 200, 210 (1987); see also Howard v. Moore, 131 F.3d 399, 416 (4th Cir. 1997).

In view of these competing concerns, a court confronting a Bruton-based severance request considers a variety of factors, including "the rights of the defendant, the rights of the co-defendant, society's interest in convicting only the guilty, and the efficient administration of justice." Howard v. Moore, 131 F.3d 399, 416 (4th Cir. 1997).

Beyond these general considerations, however, our court of appeals has offered significant guidance over the years concerning the problems presented specifically by Bruton compliance. From a general standpoint, when a redacted statement does not refer to the existence of a co-defendant, it is admissible and severance is not required. Akinkoye, 185 F.3d at 198; United States v. Locklear, 24 F.3d 641, 646 (4th Cir. 1994). Similarly, when the redacted statement refers to the existence of

15

a co-defendant through use of symbols or neutral pronouns, the redacted version is almost always admissible.  <u>Akinkoye</u>, 185 F.3d at 198; <u>United States v. Brooks</u>, 957 F.2d 1138, 1146 (4th Cir. 1992); <u>United States v. Vogt</u>, 910 F.2d 1184, 1191 (4th Cir. 1990).

Inasmuch as the government's redaction avoids any mention, or even implicit reference to, defendant Lecco, he cannot make out a <u>Bruton</u> violation.  Additionally, he suggests Friend's utterance in the Interview concerning the "8 ball" and $1,000 implicitly implicates him as its source, perhaps when taken in concert with other evidence to be introduced in the case.  In <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), however, the Supreme Court held the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession that has been redacted to eliminate the defendant's name and any reference to his existence where a limiting instruction is given, even though the statement is incriminating to the defendant when it is linked with other evidence introduced at trial.  <u>Id.</u> at 211.  Here, the 8 ball and $1,000 utterance could as well be linked to others wishing to shield involvement.

Once a redaction is offered, it is often challenged under the rule of completeness as proceeding beyond the

16

foregoing, well-marked boundaries.  This is especially so when a defendant perceives that, as a result of selective editing of his statement by the prosecution, he is left at trial to suffer the effect of his inculpatory declarations but denied the ability to benefit from his correspondingly exculpatory utterances.  When this occurs, the confessing defendant will often seek completeness, a common-law principle now partially codified in Federal Rule of Evidence 106.  As will be illustrated below, one can discern three rules from our court of appeals' precedent governing the interaction of <u>Bruton</u> and Rule 106.

Our court of appeals discussed the rule of completeness in <u>United States v. Bollin</u>, 264 F.3d 391 (4th Cir. 2001).  In <u>Bollin</u>, the defendant complained that the district court erred when it allowed the government to present a redacted version of his grand jury testimony but refused to allow him to present the omitted portions.  The court in <u>Bollin</u> noted "[t]he purpose of the rule [of completeness] is 'to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received.'"  <u>Bollin</u>, 264 F.3d at 414 (quoting <u>United States v. Wilkerson</u>, 84 F.3d 692, 696 (4th Cir. 1996)).

As further noted in <u>Bollin</u>, the Rule requires that the "portions of the excluded testimony . . . be relevant to an issue in the case, and the court need only admit the portions that are necessary to clarify or explain the portion of the testimony already admitted." <u>Id.</u> at 414. Without noting the substance of the testimony it was considering, the court of appeals then observed "The fact that some of the omitted testimony arguably was exculpatory does not, without more, make it admissible under the rule of completeness." <u>Id.</u> The court of appeals expanded further on the proper application of the Rule in relation to redacted testimony admitted against one of Bollin's co-defendants:

> [T]he omitted portions of Tietjen's testimony were not necessary to <u>avoid misleading the jury or to clarify or explain any portion of the admitted testimony</u>, and the rule of completeness does not require the court to admit Tietjen's complete grand jury testimony <u>solely because some portions might be exculpatory</u>.

<u>United States v. Bollin</u>, 264 F.3d 391, 415 (4th Cir. 2001) (emphasis added).

From <u>Bollin</u>, then, one appreciates two rules of general applicability in this circuit regarding Rule 106: (1) omitted portions of a statement may be admitted under Rule 106 when necessary to avoid misleading the jury or to clarify or explain any portion of the admitted testimony, and (2) admissibility is

not controlled simply by whether non-admitted portions of a
statement might contain exculpatory material.

A third important corollary governing the admission of
statements under Rule 106 is found in <u>United States v. Wilkerson</u>,
84 F.3d 692 (4th Cir. 1996):

> The evidentiary rules which properly govern the
> admissibility of Wilkerson's exculpatory statements are
> contained within the hearsay rule and the exceptions
> thereto. Hearsay is defined as "a statement, other than
> one made by the declarant while testifying at the trial
> or hearing, offered in evidence to prove the truth of
> the matter asserted." Admissions by a party-opponent
> are not considered hearsay and therefore can be
> admitted against that party. Thus, during direct
> examination, the government could have introduced
> inculpatory statements made by Wilkerson. The rules do
> not, however, provide an exception for self-serving,
> exculpatory statements made by a party which are being
> sought for admission by that same party. Moreover,
> even if, as Wilkerson claims, Rule 106 had applied to
> this testimony, it would not render admissible the
> evidence which is otherwise inadmissible under the
> hearsay rules. <u>See</u> <u>United States v. Woolbright</u>, 831
> F.2d 1390, 1395 (8th Cir.1987) (neither Rule 106 or
> Rule 611 authorizes a court to admit unrelated hearsay
> when that hearsay does not fall within one of the
> exceptions to the hearsay rule). Consequently, because
> the exculpatory statement in question here was pure
> hearsay and no exception enumerated in the rules
> permit[s] its introduction, the trial judge did not
> abuse his discretion in prohibiting its admission.

<u>Id.</u> at 696 (some citations omitted). This excerpt makes clear
that if a defendant seeks to supplement a government submission
with exculpatory material, he must do so in accordance with the

Rules of Evidence governing hearsay.[5]


### 3.   Antagonistic Defenses


With respect to antagonistic defenses, our court of appeals has observed as follows:

> The presence of conflicting or antagonistic defenses alone does not require severance, however.  We note that "[t]he mere presence of hostility among defendants . . . or a desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials."  The rule requires more than finger pointing. There must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . or "that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."
>
> . . . .
>
> We are of opinion that the content of the cross-examination does not rise above mere finger pointing, which does not provide the stark conflict necessary for relief. Counsel's statement focused on Najjar's part in the criminal enterprise. It did not, however, present a situation where Najjar's guilt was dictated by the asserted innocence of the co-defendants. Najjar's testimony implicated himself on the honest services prong of mail fraud. If, as counsel suggested, Najjar's testimony was self-serving, and the

---

[5]The court notes additionally the more recent pronouncement from our court of appeals in United States v. Moussaoui, 382 F.3d 453 (4th Cir. 2004), which observed "The rule is protective, merely. It goes only so far as is necessary to shield a party from adverse inferences, and only allows an explanation or rebuttal of the evidence received."  Id. at 481.

20

>    jury discredited Najjar's testimony, rather than
>    dictate guilt, counsel's tactic actually tended to
>    exonerate Najjar as to that particular count.

Najjar, 300 F.3d at 474 (citations omitted); see also United

States v. Smith, 44 F.3d 1259, 1266-67 (4th Cir. 1995) ("Because

joint participants in a scheme often will point the finger at

each other to deflect guilt from themselves or will attempt to

lessen the importance of their role, a certain amount of conflict

among defendants is inherent in most multi-defendant trials.'")

(quoted authority omitted); United States v. Ricks, 882 F.2d 885,

894 (4th Cir. 1989) ("The mere existence of antagonistic defenses

among defendants is insufficient to require separate trials.

Rather, a defendant must establish that the asserted conflict is

so prejudicial that he will be denied a fair trial if tried

jointly with his co-conspirators."); United States v. Spitler,

800 F.2d 1267, 1271-72 (4th Cir. 1986); United States v.

Ferguson, 778 F.2d 1017, 1020 (4th Cir. 1985) (noting "the

independent evidence of the guilt of both defendants was so

strong that any conflict in defenses cannot be said to have

resulted in their convictions.").

        Our court of appeals long ago observed additionally

that "[a]ntagonistic defenses do not per se require severance,

even if the defendants are hostile or attempt to cast blame on

each other." <u>United States v. Becker</u>, 585 F.2d 703, 707 (4th Cir. 1978); <u>see</u> <u>also</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 538 (1993).

B.   Analysis

As noted, the severance determination depends upon the consideration of a variety of factors, including (1) the rights of the defendant, (2) the rights of the co-defendant, (3) society's interest in convicting only the guilty, and (4) the efficient administration of justice.  The court considers within the first two factors defendants' arguments in favor of severance.

Defendants contend initially that the proposed redaction violates the rule of completeness and transforms an exculpatory statement into an inculpatory utterance.  The defendants presumably contend the only remedy is to allow admission of both the Statement and Interview in their entirety which, of course, would require severance of defendant Lecco in view of the inculpatory contents of both documents as they relate to him.  The argument fails, however, for a variety of reasons.

22

First, and most importantly, the rule of completeness, as codified in Rule 106, does not extend to oral statements like those recounted in the Interview.  Accordingly, that isolated excerpt from the Interview proposed by the government for use at trial, relating to Pat Burton's offer to Friend of $1,000 and an 8 ball of cocaine, is not subject to the Rule.  Although other circuits, and commentators, suggest the rule of completeness extends to oral statements like that found in the Interview[6], our court of appeals appears to take a narrower approach.  In <u>United States v. Wilkerson</u>, 84 F.3d 692, 696 (4th Cir. 1996), the court of appeals stated as follows:

> The common-law doctrine of completeness has been partially codified in Rule 106 of the Federal Rules of Evidence.  The rule applies only to writings or recorded statements, not to conversations.  Thus, Wilkerson's reliance on the rule is misplaced. . . . [T]he rule of completeness, if it applied to oral conversations, would not have applied here where there was no partially introduced conversation that needed clarification or explanation.

<u>Id.</u> at 696.

Were the case otherwise, defendant Friend fails to suggest how her exculpatory statements might qualify for

---

[6]<u>See</u>, <u>e.g.</u>, <u>United States v. Baker</u>, 432 F.3d 1189, 1223 (11th Cir. 2005); <u>United States v. Alvarado</u>, 882 F.2d 645, 651 (2nd Cir. 1989); <u>United States v. Castro</u>, 813 F.2d 571, 576 (2d Cir. 1987); 1 J. Weinstein & M. Berger, <u>Weinstein's Evidence</u> ¶ 106[01], at 106-4 (1986 ed.).

admission under the exceptions or exemptions that apply to
hearsay.  This is an important consideration.  As earlier noted,
<u>Wilkerson</u> provides as follows:

> The rules do not, however, provide an exception for
> self-serving, exculpatory statements made by a party
> which are being sought for admission by that same
> party.

<u>Id.</u> at 696.

        Having noted these principles, however, and with a
desire to balance the competing rights of defendant Friend and
defendant Lecco, the court is willing to consider alternatives in
addition to the concessions offered by the government that
support a joint trial.  Those concessions consist of the
elimination from its case-in-chief of Friend's Statement and all
of Friend's Interview except for the limited reference to the
offer from Burton to Friend of the $1,000 and an 8 ball of
cocaine, coupled with further explanation, if Friend desires it,
of Friend's refusal of the offer.  Indeed, there is authority for
the precise course suggested by the government, as discussed in
<u>United States v. Castro</u>, 813 F.2d 571 (2d Cir. 1987):

> While Castro had an interest in having his statement
> presented in context, the court had concurrent
> obligations both to protect the interests of the
> co-defendant Pozo (Acosta), who could have been
> implicated by Castro's full statement, and to consider
> the interests of judicial economy, which are advanced
> by a joint trial. By suggesting that the government on

24

direct, and Castro on cross-examination, elicit from
Officer Figueroa the essential point Castro wanted to
present to the jury, i.e., that Castro "in substance"
denied ownership of the cocaine, the court reasonably
accommodated these competing interests. The gist of
Castro's statement was presented without unduly
prejudicing either the right of Pozo to avoid being
implicated by a co-defendant's out-of-court statement,
or the right of Castro to have his conduct and
statement presented in context. We cannot conclude that
this approach was an abuse of discretion.

Id. at 576-77. Defendants' first argument, then, fails to

establish the necessity of severance.


     Second, the parties appear to suggest that their

defenses are antagonistic and, further, that the jury will be

unable to give separate consideration to each of their theories

in view of the confusing nature of the body of evidence.  The

court notes initially the defendants have offered little in the

way of the specifics necessary to meet the exceedingly high

standard that governs such requests.


     Regarding antagonistic defenses, it is insufficient to

simply point to hostility between defendants or their respective

desires to exculpate themselves at the expense of those charged

along with them.  Mere "finger pointing" is to be expected in

multi-defendant trials and its appearance certainly is not enough

to merit severance.  United States v. Najjar, 300 F.3d at 474.


25

Rather, "[t]here must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . or 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" Id. The defendants have failed to demonstrate the stark conflict necessary for severance.

Third, defendants raise their concerns about a joint penalty phase. In view of the government's recent concessions, namely, its willingness to use only the limited reference from the Interview to the offer from Burton to Friend of the $1,000 and an 8 ball of cocaine and further explanation, if Friend desires it, of Friend's refusal of the offer, Friend's argument has lost much steam. To the extent she yet contends she would be impermissibly robbed of her exculpatory comments in the Interview in a joint trial, attesting to Lecco's domination of her, the argument fails. First, the court observes that the contention is speculative. The jury may exonerate defendant Friend. If the court acts precipitously in severing the case based upon a penalty phase argument, all of the economies achieved by a joint trial may be lost.[7]

---

[7]The court notes defendant Lecco's penalty phase arguments are speculative as well. He speaks only in general terms without
(continued...)

Second, and without prejudice to further admissibility arguments by defendant Friend, the substance of the statements somewhat belie the mitigation value she attributes to them, namely, that they demonstrate the domination of defendant Lecco of those surrounding him.  One searches the Statement and Interview in vain for anything approaching the broader domination-type evidence defendant Friend asserts that they contain.

Having considered the defendants' interests as illustrated by the foregoing three arguments, it is also incumbent upon the court to examine society's interest in convicting only the guilty and the efficient administration of justice.  Regarding the first consideration, there appear to be conflicting witness accounts concerning who is properly chargeable with the death of Carla Collins.  A unitary trial, where one jury renders its verdict after reviewing all of the conflicting accounts, is thus of singular importance.  As one commentator has noted:

> Similarly, it has been asserted that the fact that the defendants "have conflicting versions of what took place, or the extent to which they participated in it" is "a reason for rather than against a joint trial"

---

[7](...continued)
focusing his argument on the specific trial right or rights that will be compromised in a joint penalty phase.

because "it is easier for the truth to be determined if all are required to be tried together."

4 Wayne R. LaFave, <u>Criminal Procedure</u> § 17.2(d) (2nd ed. 1999) (quoted authority omitted).

Regarding the efficient administration of justice, the government estimates that it will call approximately thirty witnesses during its case-in-chief.  If severance occurs, these witnesses will suffer great inconvenience, and perhaps increased trauma, as a result of twice being called to testify concerning the same subject matter.  A separate jury venire would also be necessary for each case, further magnifying the costs of severance.  There is also the ever-present risk of the jury not being able to discern the truth with two separate trials, perhaps resulting in wrongful acquittal or conviction.  The last tried defendant would also have the benefit of knowing the manner of the presentation of the government's case beforehand.  Each of these significant considerations illustrates the inadvisability of severance.

III.

Based upon the foregoing discussion, the court ORDERS that defendant Lecco's motion to sever, and defendant Friend's motion for a separate trial, be, and they hereby are, denied.

The Clerk is directed to forward copies of this redacted written opinion and order to all counsel of record, the United States Probation Department, and the United States Marshal.

DATED: January 29, 2007

John T. Copenhaver, Jr.
United States District Judge