```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                        CRIMINAL ACTION NOS. 2:05-00107-01

**GEORGE LECCO**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the defendant's motion to suppress, filed September 18, 2006.

At an evidentiary hearing held December 13, 2006, came the defendant, George Lecco, in person, and by counsel, Jay McCamic and Federal Public Defender Mary Lou Newberger, and came defendant Valerie Friend, in person, and by counsel, Gary Collias, and came also the United States, by Criminal Division Chief Philip H. Wright and Assistant United States Attorney Greg McVey for an evidentiary hearing on the motion to suppress. Testimony was received from two witnesses, Trooper Anthony S. Perdue and First Lieutenant Cliff Akers.

The court now enters its findings of fact, all made by a preponderance of the evidence, along with its accompanying conclusions of law.

I.

On February 16, 2005, at approximately 11:00 p.m., Trooper Perdue and FBI Special Agent Matt Hoke arrived at the defendant's Pizza Plus restaurant located in Red Jacket, West Virginia.  Upon their arrival, the law enforcement officials were greeted in the common area of the restaurant by Jean Lecco, the defendant's wife.  Ms. Lecco then proceeded to another part of the restaurant and advised defendant that law enforcement officers wished to speak with him.  The defendant then came to the common area of the store to meet Trooper Perdue and Special Agent Hoke.  A short time later, defendant and the law enforcement officials proceeded to the restaurant's food preparation area.

Defendant was advised at that time that he was the subject of monitored controlled substance transactions and that law enforcement was prepared to execute a search warrant of the Pizza Plus restaurant.  After advising the defendant he was not under arrest, that he was free to leave, and that he was not required to cooperate with law enforcement, Trooper Perdue inquired whether the defendant wished to assist law enforcement in their ongoing investigation of illegal drug activity in the

2

Red Jacket area.  Defendant agreed to cooperate.  The defendant immediately volunteered, inter alia, that his supplier was James Kitchen from Columbus, Ohio, and that he (defendant) made more money selling cocaine than pizza.

Approximately 15 minutes following the arrival of Trooper Perdue and Special Agent Hoke, First Sergeant D.M Nelson and First Lieutenant Akers arrived at the restaurant.  Trooper Perdue and Special Agent Hoke were at that time in the process of executing the search warrant in a living area of the restaurant.  The search lasted approximately 30 to 40 minutes.  This living area was within a few feet of the food preparation area.

After being advised upon their arrival by Trooper Perdue that defendant wished to cooperate, First Sergeant Nelson and First Lieutenant Akers sat down at a table with defendant in the food preparation area.  Trooper Perdue requested First Lieutenant Akers to take the defendant's statement.  Again, defendant was not in custody at this time or at any other point during the encounter with law enforcement.

Prior to receiving the defendant's statement, First Sergeant Nelson obtained a form FD-395 from Special Agent Hoke.  The form, entitled "INTERROGATION; ADVICE OF RIGHTS[,]" contains

the substance of those warnings required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and its progeny.  First Sergeant Nelson read the contents of the form to defendant.  Once the form was read, defendant signed the "WAIVER OF RIGHTS" portion of the form, after which his signature was witnessed in like manner by First Sergeant Nelson and First Lieutenant Akers.

Defendant took no action at any time suggesting that he did not understand the form.  Additionally, defendant never suggested that he desired the services of counsel before proceeding further.  The interview lasted approximately 30 to 40 minutes, at which time it was terminated.  The termination resulted from First Lieutenant Akers' desire to facilitate the appointment of counsel to represent the defendant.  First Lieutenant Akers terminated the interview in an attempt to forestall the defendant, a previously convicted felon, from further inculpating himself once he began providing in-depth, previously unknown information concerning his possession of firearms.  First Lieutenant Akers advised the defendant that the United States Attorney's office might be willing to provide him with a target letter, which would lead to the appointment of counsel to represent him.

At the conclusion of the search, the fruits obtained therefrom were logged by Special Agent Hoke. The interview concluded at approximately the same time as the search. The four law enforcement officers then collectively departed the premises.

## II.

Defendant contends that his February 16, 2005, statement to law enforcement should be suppressed as violative of the Fifth and Sixth Amendments. Specifically, defendant contends he did not knowingly and intelligently waive his Fifth and Sixth Amendment rights and that the <u>Miranda</u> warnings contained on the form came too late.

A defendant's Fifth Amendment <u>Miranda</u> right applies only to "custodial interrogation" by law enforcement. <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 178 (1991). One is deemed to be in custody for <u>Miranda</u> purposes "if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." <u>United States v. Sullivan</u>, 138 F.3d 126, 130 (4th Cir. 1998). Whether an individual is in custody is an objective determination that is based upon the totality of the circumstances. In essence, the fact finder endeavors to

determine "how a reasonable man would have understood the [accused's] position at the time."  United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001).

A defendant's statements during custodial interrogation are presumptively compelled in violation of the Fifth Amendment's Self-Incrimination Clause.  Miranda v. Arizona, 384 U.S. 436, 457-58 (1966).  The government may defeat the presumption, however, by demonstrating that law enforcement officers (1) adequately informed the defendant of his Miranda rights, and (2) obtained a waiver of those rights.  Id. at 444.

A defendant's waiver of his Miranda rights must be "knowing[] and voluntar[y][.]"  North Carolina v. Butler, 441 U.S. 369, 373 (1979).  To determine whether a defendant was possessed of the mental state requisite to a valid assent, a court examines the "totality of the circumstances."  Moran v. Burbine, 475 U.S. 412, 421 (1986) (internal quotation marks omitted).  A defendant acts knowingly if he had a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Id.  Regarding voluntariness, one inquires whether the statement was "the product of a free and deliberate choice [or, alternatively, the result of] intimidation, coercion, or deception."  Id.

6

Defendant was not arrested on February 16, 2005, and was advised by law enforcement that he was not under arrest. Indeed, based upon the totality of the circumstances, defendant was free to leave at any time. Inasmuch as defendant's freedom of action was not curtailed in any way, the court concludes his rights under the Fifth Amendment and Miranda did not attach during his encounter with law enforcement. He was not subjected to custodial interrogation. The defendant's statements to law enforcement on February 16, 2005, both before and after the Miranda warnings were made by him voluntarily, knowing, and intelligently.

In the alternative, should it be later found that defendant was subjected to custodial interrogation, the court concludes the government has overcome the Miranda presumption. Defendant was read his Miranda rights by First Sergeant Nelson. Defendant gave no indication at any time that he did not fully comprehend those rights. Defendant's waiver of those rights is reflected by his voluntary, witnessed signature in the waiver portion of the form.

Based upon these facts, the court concludes the defendant was possessed of a full awareness of both the nature of

the rights being abandoned and the consequences of the abandonment decision.  The court additionally concludes that the defendant's action was the product of his free and deliberate choice.  Based upon the totality of the circumstances, then, the court concludes the defendant knowingly and voluntarily waived any <u>Miranda</u> rights.

The court, accordingly, ORDERS that the defendant's motion to suppress be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

>                    DATED:  January 29, 2007
>
>                    _____
>                    John T. Copenhaver, Jr.
>                    United States District Judge