UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.   CRIMINAL ACTION NOS. 2:05-00107-01
                                     2:05-00107-02

**GEORGE LECCO and
VALERIE FRIEND**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the defendants' joint motion in limine to preclude any reference to Carla Collins as a confidential informant, a federal cooperating source, a cooperating witness or any other reference to her acting under federal authority ("joint motion in limine"), filed September 18, 2006.

I.

On August 16, 2006, the government filed a thirteen-count, third superseding indictment accusing one or both of the defendants of (1) controlled substance offenses (21 U.S.C. §§ 846 and 841(a)(1))(Counts One, Seven, Eight, Nine and Ten), (2) use of a firearm during and in relation to drug trafficking (18 U.S.C. § 924(c)(1)(A))(Counts Two, Three, Four), (3) being a felon in possession of a firearm (18 U.S.C. §§ 922(g)(1) and

924(a)(2))(Counts Five and Six), (4) murder with a firearm during and in relation to a cocaine conspiracy (18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1))(Count Eleven), (5) killing a person for aiding a federal investigation (18 U.S.C. § 1121(a)(2))(Count Twelve), and (6) conspiracy to destroy and conceal evidence (18 U.S.C. § 1512(k))(Count Thirteen).  The government attached special findings pursuant to 18 U.S.C. §§ 3591 and 3592.  On August 16, 2006, the United States Attorney filed his notices of intent to seek the death penalty as to both defendants.[1]

Carla Collins plays a central role in the events leading to the pending charges.  Count Eleven alleges that, in the course of knowingly using and carrying a firearm during and in relation to a drug trafficking crime, defendants "caused the death of Carla Collins through the use of a firearm . . . ." (Third Supersed. Indict. at 12).  Count Twelve alleges that defendants "kill[ed] and cause[d] the killing of Carla Collins, a person assisting a Federal criminal investigation . . . while that assistance was being rendered and because of it . . . ." (Id. at 13).

---

[1] The court notes in its memorandum opinion entered today regarding severance that reference was mistakenly made to the second superseding indictment and the earlier notices of intent to seek the death penalty filed May 15, 2006.  The references do not affect the court's analysis of the issues there presented but they are nevertheless corrected to reflect the present charging instrument and related notices.

2

Defendants now jointly move to preclude any reference to Collins as either a confidential informant, a federal cooperating source, a cooperating witness, or any other reference to her as acting under federal authority. In support, defendants contend, inter alia, as follows: (1) the government has produced only two forms relating to Collins' service in the investigation, namely, (a) a Federal Drug Task Force Cooperating Individual Agreement ("Agreement") signed by Collins and Trooper A.S. Perdue and (b) a voucher for payment of $100 in expenses incurred by Collins during her service to law enforcement; (2) an investigating officer with the Huntington Federal Drug Task Force ("Task Force") has stated under oath that a "federal cooperating source" is someone "we sign . . . up federally" using a particular federal form, after which the person is assigned a confidential informant number; (3) these actions by law enforcement were insufficient to confer federal status on Collins according to the Federal Bureau of Investigation's ("FBI") Manual of Investigative Operations and Guidelines ("MIOG") and the Attorney General's Guidelines Regarding the Use of Confidential Informants ("Guidelines"); (4) it would be misleading and inappropriate to allow the government to refer to Collins as a federal confidential informant or some other cooperating federal agent; (5) it had been reported to law enforcement that Collins

3

stole money from Katrina Browning and the theft was not reported as required by the MIOG, indicating Collins was not treated as being covered by the MIOG; (6) a second investigating officer has testified that law enforcement ceased utilizing Collins sometime prior to her death because she was performing investigative work without proper supervision and authority.

The government responds, inter alia, as follows: (1) the Agreement with Collins required her to furnish information to the Task Force in an ongoing federal investigation; (2) Collins never signed an agreement with the FBI; (3) Collins provided information as late as April 3, 2005, concerning Lecco's illegal transactions; (4) the identified Task Force member erroneously referred to Collins as a "federal cooperating source[;]" (5) the Guidelines expressly preclude third parties from relying upon them as creating any independent rights; (6) it was not mandatory to apply the Guidelines to Collins; (7) compliance with the Guidelines is thus irrelevant; (8) United States v. Jackson, 327 F.3d 273 (4th Cir. 2003), and other authorities provide that internal, Department of Justice protocols vest no rights in criminal defendants.

The defendants assert in reply, inter alia, as follows: (1) the MIOG and the Guidelines set policy for the use of

4

confidential informants; (2) the MIOG's and Guidelines' criteria were not followed as to Collins; (3) the MIOG makes the Guidelines applicable to Collins; (4) the third-party language identified by the government has no application here and is intended solely to preclude civil actions against the government for violations of its own internal protocols; and (5) the policy under consideration in <u>Jackson</u> was discretionary unlike the Guidelines and the MIOG.  The court has likewise considered the parties' additional arguments made in their supplemental briefing.

Within the MIOG at section 137-13 entitled "ATTORNEY GENERAL'S GUIDELINES ON THE USE OF INFORMANTS" appears the following admonition:

> These guidelines on the use of informants and Confidential Sources are set forth solely for the purpose of internal FBI guidance.  They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative and litigative prerogatives of the FBI.

(MIOG § 137-13).  The Guidelines contain the similar language set forth below:

> Nothing in these Guidelines is intended to create or does create an enforceable legal right or private right of action by a CI or any other person.

(Guidelines § I.H).

II.

In <u>United States v. Caceres</u>, 440 U.S. 741, 755-56 (1979), the Supreme Court observed as follows:

> Regulations governing the conduct of criminal investigations are generally considered desirable, and may well provide more valuable protection to the public at large than the deterrence flowing from the occasional exclusion of items of evidence in criminal trials. . . . [W]e cannot ignore the possibility that a rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent impact on the formulation of additional standards to govern prosecutorial and police procedures. . . . In the long run, it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration of the kind displayed by this record, than either to have no rules except those mandated by statute, or to have them framed in a mere precatory form.

<u>Id.</u> at 755-56.

The observation in <u>Caceres</u> has led either directly or indirectly to the suggestion by numerous courts of appeal, including our own, that internal agency guidelines offer no assistance to an accused complaining of their violation in the investigation or prosecution of his or her case. <u>See</u>, <u>e.g.</u>, <u>Jackson</u>, 327 F.3d at 295 ("That the Department of Justice has developed an internal protocol for exercising discretion and channeling prosecutorial resources does not provide license for courts to police compliance with that protocol, and it is well

6

established that the Petite policy and other internal prosecutorial protocols do not vest defendants with any personal rights."); <u>United States v. Craveiro</u>, 907 F.2d 260, 264 (1st Cir. 1990) (stating "[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party."); <u>United States v. Piervinanzi</u>, 23 F.3d 670, 682 (2nd Cir. 1994); <u>United States v. Wilson</u>, 413 F.3d 382, 389 (3rd Cir. 2005); <u>United States v. Myers</u>, 123 F.3d 350, 356 (6th Cir. 1997); <u>In re Klein</u>, 776 F.2d 628, 635 (7th Cir. 1985); <u>United States v. Fernandez</u>, 231 F.3d 1240, 1246 (9th Cir. 2000); <u>United States v. Blackley</u>, 167 F.3d 543, 548-49 (D.C. Cir. 1999).

In addition to this authority, one commentator has observed as follows regarding the internal guidelines authored by the Department of Justice:

> Prosecutors . . . do not always adhere to these guidelines.  The accused has no judicial recourse when prosecutors fail to abide by these guidelines, <u>as courts routinely find these guidelines strictly internal and unenforceable at law</u>. Thus, when it comes to DOJ guidelines, a failure to follow office procedure is an error that cannot be used by the accused who might suffer as a result of this violation.

Ellen S. Podgor, <u>Department of Justice Guidelines: Balancing "Discretionary Justice"</u> 13 Cornell J. L. & Pub. Pol'y 167, 169 (2004) (emphasis supplied); <u>see</u> <u>also</u> 1 Wayne R. LaFave <u>et</u> <u>al.</u>

7


Criminal Procedure § 1.6 (2d ed. 2006) ("In general . . . the message to the federal courts [after Caceres] is that the basic judicial remedy, upon learning of a deviation from the agency's regulations, is to call it to the attention of that unit of the agency responsible for applying internal discipline.")

In view of the rather one-sided state of the law, defendants' request is not well taken.  The court, accordingly, ORDERS that the joint motion in limine be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to the defendants, all counsel of record, the United States Probation Department, and the United States Marshal.

DATED: January 29, 2007

_____
John T. Copenhaver, Jr.
United States District Judge