```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

**v.**                              **CRIMINAL ACTION NOS. 2:05-00107-01**
                                                        **2:05-00107-02**

**GEORGE LECCO and**
**VALERIE FRIEND**

## MEMORANDUM OPINION AND ORDER

**Pending are defendants' joint (1) motion for a full complement of twenty peremptory challenges, (2) motion to trifurcate jury deliberations, (3) motion for appropriate punishment-related voir dire, attorney questioning, use of the jury questionnaire and for individual, sequestered voir dire, and (4) objections to punishment-related questions, all filed September 18, 2006, and (5) motion to include additional capital punishment questions in the proposed jury questionnaire, filed February 15, 2007. The government responded to the motion to include additional capital punishment questions on February 23. Defendants replied on February 28.**

**At a pretrial motions hearing held February 20, 2007, came defendant George Lecco, in person, and by counsel, Jay McCamic and Federal Public Defender Mary Lou Newberger, and defendant Valerie Friend, in person, and by counsel, Kevin**

McNally and Gary Collias, and the United States, by Criminal Division Chief Philip H. Wright, Special Assistant United States Attorney Richard Burns, and Assistant United States Attorney Greg McVey.

Regarding the joint motion for a full complement of twenty peremptory challenges, defendants represent that a number of courts have permitted additional peremptory challenges in capital cases.  See, e.g., United States v. Johnson, No. 3:92-cr-68 (E.D. Va.) (defendants awarded 30 peremptory challenges); United States v. Murray, No. 92-200 (M.D. Pa.) (defendants awarded 30 peremptory challenges); United States v. Diaz, No. 94-328 (N.D. N.Y.) (defendants awarded 50 peremptory challenges); United States v. Llera-Plaza, No. 98-362 (E.D. Pa.) (defendants awarded 33 peremptory challenges)(each defendant received 10, with an additional one each for the alternates); United States v. Quinones, No. 00-761 (S.D.N.Y.) (defendants awarded 32 peremptory challenges); United States v. Moussaoui, No. 01-cr-455 (E.D. Va.) (defendant awarded 30 peremptory challenges); United States v. Taylor, No. 02-CR-410 (D. Md.) (defendant awarded 30 peremptory challenges); United States v. Cisneros, No. 04-CR-283-ALL (E.D. Va.) (defendants awarded 40 peremptory challenges).  The court concludes that it is vested with discretion to alter the number of peremptory challenges available to the defendants.

As more fully stated on the record during the hearing held February 20, 2007, the defendants have strategic interests that diverge somewhat relating to the appropriate exercise of their peremptory challenges.  To account for this difficulty, the court ORDERS that the joint motion be, and it hereby is, granted insofar as the government will be allotted a total of 20 peremptory challenges and the defendants allotted a total of 30 such challenges to be shared between them.  The court further ORDERS that the joint motion be, and it hereby is, denied in all other respects.

Regarding the joint motion to trifurcate jury deliberations, it is noted that the government has withdrawn its opposition to like requests in other federal capital cases.  See, e.g., United States v. Natson, 444 F. Supp.2d 1296, 1309 (M.D. Ga. 2006) ("Although the Government initially opposed this motion, it informed the Court at the hearing on the motion that it no longer opposed trifurcation.").

That consideration aside, the court notes the well-reasoned and considered analysis in United States v. Johnson, 362 F. Supp.2d 1043 (N.D. Iowa 2005), concerning the merits of trifurcation.  In particular, the court shares the concern that unfair prejudice may result from the jury hearing evidence of

"non-statutory" aggravating factors, such as victim impact evidence, before determining whether the requisite mental state and "statutory" aggravating factors have been proven.  <u>Id.</u> at 1108 (the court noting, in its own, personal experience, the "unsurpassed emotional power of victim impact testimony on a jury.").

Inasmuch as trifurcation avoids this and similar types of difficulties, it is ORDERED that the joint motion to trifurcate be, and it hereby is, granted to the extent that, if this matter proceeds to the penalty phase, the proceeding will be bifurcated as to death eligibility and selection.

Dispersed throughout defendants' remaining filings are a number of issues, each of which the court addresses in turn. First, on March 15, 2007, the court, consistent with the parties' requests, instructed, and questioned for hardship and related issues, an initial panel of 161 potential jurors.  Those individuals not excused for cause on March 15, 2007, were required that same day to complete the written questionnaire jointly agreed upon by the parties.[1]

---

[1] Five individuals were permitted to complete the questionnaire on March 16, 2007, in view of the late hour at which their participation in more individualized, hardship voir
(continued...)

Second, the court notified the parties during a teleconference held March 13, 2007, that it would deny defendants' joint motion to include two further capital punishment questions in the proposed jury questionnaire. Those two proposed questions were as follows:

> 109(a): In your opinion, should everyone who commits an intentional murder receive the death penalty if the murder involved:
>
> | | |
> |---|---|
> | Beating of the victim | ❏ YES ❏ NO |
> | A prosecution witness | ❏ YES ❏ NO |
> | A drug conspiracy | ❏ YES ❏ NO |
> | Payment or promise of payment | ❏ YES ❏ NO |
> | A female victim | ❏ YES ❏ NO |
> | Drug and alcohol intoxication | ❏ YES ❏ NO |
>
> 109(b): In your opinion, could the following facts support a sentence of life imprisonment instead of the death penalty for a person who commits an intentional murder of a government witness when:
>
> | | |
> |---|---|
> | The person had an abusive or neglectful childhood | ❏ YES ❏ NO |
> | The person had a mental illness or emotional disturbance | ❏ YES ❏ NO |
> | The person was sexually abused | ❏ YES ❏ NO |
> | The person was under the influence of alcohol or drugs | ❏ YES ❏ NO |
> | The person had little or no criminal record. | ❏ YES ❏ NO |
> | The person had many years as a productive member of society | ❏ YES ❏ NO |

---

[1](...continued)
dire concluded. Additionally, 35 potential jurors did not appear as commanded on March 15. The jury administrator has been directed to use her best efforts to locate each of these potential jurors. When contacted, the potential jurors will be required to advise the court in writing why they did not appear.

| | |
|---|---|
| Others equally guilty will not be punished by death | ❏ YES ❏ NO |
| The victim was engaged in criminal conduct | ❏ YES ❏ NO |
| The victim was engaged in the longtime use and distribution of drugs | ❏ YES ❏ NO |

The government has responded in opposition, listing alternative questions that might be posed instead.

The inquiry is a difficult one. The United States Court of Appeals for the Tenth Circuit, in <u>United States v. McVeigh</u>, 153 F.3d 1166 (10th Cir. 1998), can be read to prohibit context-specific questions on a categorical basis. Additionally, in several cases, our court of appeals has concluded it is not error to refuse such questions. <u>See</u>, <u>e.g.</u>, <u>Richmond v. Polk</u>, 375 F.3d 309, 329-31 (4th Cir. 2004).

At bottom, the interests of the court, the parties, and the public are best served by seating jurors who will, if necessary, be able to conduct the penalty weighing process in a fair and impartial manner. The court's desire, consistent with Supreme Court precedent, is to pursue a balanced approach that will achieve that end without allowing the potential jurors to be "staked out" (committing a juror to react in a certain way based on certain findings) or "sneak previewed" (ascertaining how a juror will weigh particular evidence at trial).

The court is concerned that the defendants' proposed questions will not be susceptible to categorical answers by many, if not a majority, of potential jurors.  As a result, the questions may provoke a categorical answer where one would not have otherwise been given originally or, alternatively, result in confusion.  Although the court may permit inquiry along the lines suggested by defendants during individual voir dire, the proposed additional questions were not, as noted, included within the questionnaire.

Consistent with the court's oral ruling, it is ORDERED that the joint motion to include additional capital punishment questions 109(a) and (b) in the proposed jury questionnaire be, and it hereby is, denied.

Third, the parties disagree concerning the method by which they will exercise their peremptory challenges.  In view of the disparate number of peremptory challenges between the government and the defendants, the court concludes the traditional method of exercising strikes is the better course.  Accordingly, the court will employ the traditional method for exercise of peremptory challenges, with approximately 75 qualified, potential jurors available for the process at the conclusion of individual voir dire.  The court will also permit

attorney-conducted voir dire during the individual voir dire process to commence on April 16, 2007.

Fourth, the court invited the parties' input concerning its questioning and instructions throughout the jury selection process, specifically (1) when the potential jurors appeared on March 15, 2007, for inquiry by the court and to execute the questionnaire, (2) for individual voir dire to commence on April 16, 2007, and (3) at the time the jury is seated to try the issues in the case.  The parties have submitted a proposed script for the first two phases.  The parties are further directed to submit an additional, proposed script for the third phase no later than March 30, 2007.

The court contemplates the following time line of dates and case events leading to opening statements:

1. March 19, 2007--Clerk makes available electronic, compact disc copies to counsel of executed questionnaires;

2. April 4, 2007--Counsel inform the court of those potential jurors they mutually recommend be dismissed for cause;

3. April 9, 2007--The Clerk sends to each potential juror a letter advising them of their report date and time for individual voir dire; and

4. April 16, 2007--Jurors begin reporting for individual voir dire.  Any additional challenges for cause will be entertained no later than the conclusion of (1) the morning session for jurors interviewed during that period; and (2) the afternoon session for jurors interviewed during that period.

The next business day after a panel of approximately 75 potential jurors is passed for cause, those potential jurors will be instructed to return to the Robert C. Byrd United States Courthouse and the parties will at that time exercise their peremptory challenges.  Counsel are encouraged to identify in their forthcoming submission any similar matters that require like consideration.[2]  Any objections to the foregoing schedule and events must be made in writing no later than March 23, 2007.

Having resolved the extant matters contained in defendants' joint motion for appropriate punishment-related voir dire, attorney questioning, use of the jury questionnaire and for individual, sequestered voir dire and the joint objections to punishment-related questions, the court ORDERS that those two motions be, and they hereby are, treated as terminated.

---

[2]The court perceives one additional argument by defendants. In a capital case, a prospective juror may be excluded for cause when the juror's views "'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  Morgan v. Illinois, 504 U.S. 719, 728 (1992) (quoted authority omitted).  Any juror who "in no case would vote for capital punishment, regardless of his or her instructions," Morgan, 504 U.S. at 728, and any juror "who will automatically vote for the death penalty in every case," id. at 729, is not an impartial juror and will be removed for cause.  As reflected in the proceedings to date, the court intends to follow Supreme Court precedent on the matter.  To the extent defendants object to this approach, either in principle or based upon the text of the FDPA, such objection is overruled.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: March 21, 2007

_____
John T. Copenhaver, Jr.
United States District Judge