```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                          CRIMINAL ACTION NOS. 2:05-00107-01
                                                 2:05-00107-02

**GEORGE LECCO and**
**VALERIE FRIEND**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the defendants' joint motion to declare the Federal Death Penalty Act ("FDPA") unconstitutional, to dismiss the "special findings" from the third superseding indictment, to strike the notice of intent to seek the death penalty, in whole or in part, and to order discovery and/or to conduct an evidentiary hearing, filed September 18, 2006.

I.

On August 16, 2006, the government filed notices of intent to seek the death penalty relating to each defendant respecting Counts Eleven and Twelve of the third superseding indictment. The counts allege separately (1) murder with a firearm, during and in relation to a cocaine conspiracy, causing the death of Carla Collins, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and (2) killing a person for aiding a

federal investigation, in violation of 18 U.S.C. §§ 1121(a)(2) and 2.

The joint motion lodges a number of challenges to the defendants' continued prosecution under the FDPA. Each contention is addressed within.

## II.

A.   The Constitutionality of the FDPA

Defendants initially contend the FDPA is unconstitutional for a variety of reasons. First, they assert the federal death penalty is so rarely sought and imposed that it necessarily operates in a fundamentally arbitrary and capricious manner. The argument is based primarily upon the separate opinions in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972). (Memo. in Supp. at 1) ("Under an analysis that was persuasive to the Supreme Court in <u>Furman</u>, the federal death penalty is sought and imposed in a shockingly arbitrary, capricious and 'unusual' manner."). As noted in the government's response, defendants' argument has been rejected previously by several courts. Additionally, no court has invalidated the FDPA based upon the argument offered by defendants. The court rejects the argument.

Defendants next contend that "[t]he dead can never be exonerated" and that the appreciable risks of executing the innocent by use of the FDPA requires a finding that it is unconstitutional.  Defendants rely primarily upon <u>United States v. Quinones</u>, 205 F. Supp.2d 256 (S.D.N.Y. 2002).  Defendants candidly concede the United States Court of Appeals for the Second Circuit reversed the cited decision in <u>United States v. Quinones</u>, 313 F.3d 49, 69 (2nd Cir. 2002), an appellate opinion that observed as follows:

> Despite suggestions by the District Court and the defendants that they are embracing a novel challenge to the constitutionality of capital punishment, the idea that a convicted person has a right to the continued opportunity for exoneration during the course of his natural life is not new: Because this proposition has been presented to the Supreme Court on a number of occasions and repeatedly rejected by the Court, we hold that the continued opportunity to exonerate oneself throughout the natural course of one's life is not a right "so rooted in the traditions and conscience of our people as to be ranked as fundamental."

<u>Id.</u> at 62.  The facial appeal of the argument is certainly of some moment.  At the same time, it is one that has met with virtually no success over the years from a jurisprudential standpoint.  As noted by the government, the lower court decision in <u>Quinones</u> "has been rejected by every other court to have considered it."  (Resp. at 9-10).  Inasmuch as the available authorities have rather uniformly taken a position contrary to

that offered by the defendants, the court, while recognizing that a risk such as that suggested by the defendants may be said to exist, is likewise constrained to reject the argument.

Next, defendants contend that the absence of any principled basis for distinguishing between cases in which the federal death penalty is imposed from cases in which it is not necessarily renders the FDPA unconstitutional. The argument includes pages of synopses from cases with reprehensible conduct that in some instances resulted in a death finding and in others a lesser sentence. What is absent from the argument is any case law specifically adopting the defendants' view. Absent such authority, the court is unwilling to strike down an Act of Congress that has consistently withstood various constitutional challenges. See, e.g., United States v. Fulks, 454 F.3d 410, 438 (4th Cir. 2006) ("For these reasons, the evidentiary standard of the FDPA withstands constitutional scrutiny.").

Defendants next contend the FDPA does not satisfy the requirements of Ring v. Arizona, 536 U.S. 584 (2002). In sum, defendants contend the weighing process using aggravating and mitigating factors at the penalty selection stage is the functional equivalent of an element and that death selection must thus come to pass only if the aggravating factors outweigh

mitigating factors beyond a reasonable doubt.  Defendants concede that other courts have taken a different approach, including the United States Court of Appeals for the Eighth Circuit in United States v. Purkey, 428 F.3d 738, 750 (8th Cir. 2006) (stating "it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause.").

As the government correctly points out, the product of the weighing process is not a finding of fact, unlike a defendant's mental state at the time of the crime or the presence of at least one statutory aggravating factor.  (Resp. at 23) ("[t]he comparative weight of the aggravating and mitigating factors, and whether they justify a death sentence, has no independent existence outside the minds of the juror in the deliberation room.  As such, the weighing process describes a 'consideration' and not a "fact."). Based upon this contention and the analysis in Purkey, the court rejects defendants' argument.[1]

---

[1] Defendants also contend the FDPA is unconstitutional inasmuch as it is applied disproportionately to those accused of killing white and female victims.  In the alternative, defendants request discovery and an evidentiary hearing to develop and examine statistical data.  The defendants' argument is foreclosed by, inter alia, McCleskey v. Kemp, 481 U.S. 279 (1987) and United States v. Armstrong, 517 U.S. 456, 483 (1996).

5

B.   Dismissal on Other Grounds

Defendants next challenge some portions of the charging instrument and related documents on various grounds.  The first ground alleged is that the grand jury was not given the choice of whether or not to hold the defendants answerable for a capital crime because it was unaware of the consequences of the Notice of Special Findings contained within the third superseding indictment.  In sum, defendants contend as follows:

> In this case, the government presented to the grand jury two of the three elements necessary to make the Defendants "death-eligible" for Eighth Amendment purposes -- the intent requirements under 18 U.S.C. § 3591(a)(2) and the alleged statutory aggravating factors under 18 U.S.C. § 3592(c). On information and belief, however, the government did not inform the grand jury of the consequences of those special findings, i.e., that by returning the indictment, the Defendants would be held to answer to an offense punishable by death.

(Memo. in Supp. at 26).

As noted by the government, the Supreme Court has made clear that the Indictment Clause of the Fifth Amendment does not require the government to inform the grand jury of the potential penalties that might attach as a result of any special findings. One district court recently confronted with the identical

argument cogently observed as follows:

> Defendant . . . cites no authority in support of this assertion and the Court has found none. Indeed . . . Defendant . . . attempts to extend the meaning of the Indictment Clause beyond its Constitutional limits. The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense. See Branzburg, 408 U.S. at 686-87, 92 S.Ct. 2646; Stirone, 361 U.S. at 217-19, 80 S.Ct. 270; Matthews, 246 F. Supp.2d 137, 146-47 ("Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination.") (citations omitted); Regan, 221 F.Supp.2d at 680; see generally Fed.R.Crim.P. 7(a), (c) ("An offense which may be punished by death shall be prosecuted by indictment . . . . . The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.") (emphasis added).

United States v. Haynes, 269 F. Supp.2d 970, 981 (W.D. Tenn. 2003). Based upon this analysis, the court rejects defendants' argument.

Second, defendants contend the government did not obtain a charging instrument alleging all elements of a capital offense because it failed to seek a grand jury decision concerning whether the aggravating factors outweighed the mitigating factors so as to justify the ultimate sanction. The argument is foreclosed in this circuit:

> Because only one statutory aggravating factor is required under the Act to render a defendant death-eligible, we hold that the indictment need only allege one such aggravating factor. See United States v. Jackson, 327 F.3d 273, 287 (4th Cir. 2003) (Niemeyer, J., concurring) ("[W]hen the death penalty is dependent on a finding of an aggravated offense, then the core statutory elements of that offense, as well as at least one aggravating factor, must be charged in the indictment and found by the jury."). There is no requirement that the indictment allege all of the factors that might be weighed by the jury when deciding whether to impose a death sentence. So long as one statutory aggravating factor is alleged in the indictment and the petit jury finds that statutory aggravating factor to exist, the indictment is not defective as to the capital offense charged. See id. The elements of the offense of conviction have been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt.

United States v. Higgs, 353 F.3d 281, 299 (4th Cir. 2003).  Were the rule otherwise, one ponders how the government might, without the defendants' input, fully present to the grand jury the mitigating factors that might apply to them.  The court, accordingly, rejects the contention.

Defendants next seek dismissal based upon a putative lack of notice under the Constitution and 18 U.S.C. § 3593(a).  In a related argument, defendants request a penalty-related bill of particulars.  The February 9, 2007, memorandum opinion addressed this matter and directed the government to submit to the defendants an outline summarizing the information it intends to use to establish the factors set forth in the notices.  The

government has complied.  The court, accordingly, deems the notice argument to be moot.

Defendants next contend the government has improperly alleged that they committed the offenses with four separate mental states.  Defendants assert the allegations should be stricken because a person cannot simultaneously possess four different mental states.  Specifically, defendants observe (1) the allegations are illogical, and (2) permitting the jury to consider the allegations will impermissibly skew the weighing process toward death selection.  Although the defendants concede the mental states found in 18 U.S.C. § 3591(a)(2) are not aggravating factors that are actually weighed, they surmise

> a jury will likely treat findings on the mental state factors as aggravation related to the circumstances of the offense when weighing the aggravating and mitigating factors to determine the appropriate sentence.  The presence of more than one factor will therefore arbitrarily skew the sentencing process in favor of death.

(Memo. in Supp. at 35).

The argument is not well taken in view of our court of appeals precedent.  United States v. Jackson, 327 F.3d 273, 300 (4th Cir. 2003) ("Jackson next contends that the district court erred in allowing the jury to find and consider all four intent factors when any one of them alone was sufficient to support

9

imposition of the death penalty and that this alleged error unconstitutionally tipped the scales in favor of a death sentence. . . . The findings regarding intent . . . play no role in the weighing process, which is done when the jury considers aggravating and mitigating circumstances. . . . [T]he intent under 18 U.S.C. § 3591 operates only as a threshold to reach the aggravating factors."). Inasmuch as Jackson forecloses defendants' argument, the court rejects the contention.

Defendants next request that the statutory aggravating factors be dismissed. They contend that the factors do not adequately channel the sentencer's discretion by (1) narrowing the category of convicted defendants eligible to receive the death penalty, and (2) minimizing the risk of arbitrary and capricious action. See Kansas v. Marsh, 126 S. Ct. 2516, 2524 (2006) ("Together, our decisions in Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed.2d 346 (1972) (per curiam), and Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.), establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime.").

**Defendants specifically challenge the aggravating factors alleging (1) the victim was killed after substantial planning and premeditation to cause her death, and (2) the acts were committed in a heinous, cruel or depraved manner in that torture or serious physical abuse were involved.  As noted by the government, each of the challenged factors has been upheld within the context of the FDPA and the existing case law otherwise runs contrary to defendants' argument in toto.  (Resp. at 37-42).  The court thus rejects the defendants' contention.**

**Defendants next request that the non-statutory aggravating factors alleged by the government be stricken.  Specifically, defendants assert that (1) the victim impact non-statutory aggravating factor is not sufficiently aggravating and does not sufficiently narrow the class of killers for whom the death penalty is available, and (2) the victim impact and obstruction of justice non-statutory aggravating factors essentially duplicate the underlying capital offense of witness killing.**

**Regarding the first challenge, the argument runs counter to the existing authorities which have rejected similar challenges to the same non-statutory aggravator.  See, e.g.,**

11

**Higgs**, 353 F.3d at 320-21.  The existing authorities also counsel in favor of rejecting defendants' second challenge.  See **Jones v. United States**, 527 U.S. 373, 401 (1999) (plurality); **Higgs**, 353 F.3d at 315 (noting "the Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase.") (citing **Lowenfield v. Phelps**, 484 U.S. 231, 246 (1988)); **United States v. Chanthadara**, 230 F.3d 1237, 1273 (10th Cir. 2000); **United States v. Llera Plaza**, 179 F. Supp.2d 464, 490 (E.D. Pa. 2001) ("Based on **Payne**[ **v. Tennessee**, 501 U.S. 808, 827 (1991)], federal courts have routinely allowed the use of victim impact evidence in FDPA proceedings.").[2]

### III.

Based upon the foregoing discussion, the court ORDERS that the defendants' joint motion to declare the FDPA unconstitutional, to dismiss the "special findings" from the

---

[2] Defendants also contend that inasmuch as the United States Attorney for this district initially chose not to pursue the ultimate sanction, the government must be precluded from now seeking that penalty here.  No court has sustained the argument.  See **United States v. Cooper**, 91 F. Supp.2d 90, 104 n.8 (D.D.C. 2000) (district court rejecting the argument without discussion within a 27 page opinion).

third superseding indictment, to strike the notice of intent to seek the death penalty, in whole or in part, and to order discovery and/or to conduct an evidentiary hearing be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: April 5, 2007

_____
John T. Copenhaver, Jr.
United States District Judge