UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA

v.                              CRIMINAL ACTION NOS. 2:05-00107-01
                                                     2:05-00107-02

GEORGE LECCO and
VALERIE FRIEND


MEMORANDUM OPINION AND ORDER


      Pending is defendants' joint motion for a new trial ("new trial motion"), filed July 6, 2007.


I.


A.   The Charges and the Verdict


      On August 16, 2006, the government filed a third superseding indictment alleging the following offenses:

    1.   Count One -- That defendants George Lecco ("Lecco") and Valerie Friend ("Friend") knowingly conspired with each other and with James Michael Kitchen, Charles T. Hatfield, and Patricia Burton to commit offenses in violation of 21 U.S.C. § 841(a)(1), that is knowingly and intentionally to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846;

2.    Counts Two through Four -- That Lecco used a firearm during and in relation to drug trafficking offenses for which he may be prosecuted in a district court in violation of 21 U.S.C. § 841(a)(1), namely, the knowing and intentional distribution of a quantity of cocaine, all in violation of 18 U.S.C. § 924(c)(1)(A);

3.    Counts Five and Six -- That Lecco knowingly possessed certain firearms in and affecting interstate commerce after he had previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

4.    Counts Seven through Ten -- That Lecco knowingly and intentionally distributed a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1);

5.    Count Eleven -- That Lecco and Friend committed murder with a firearm, during and in relation to a cocaine conspiracy, causing the death of Carla Collins, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1);

6.    Count Twelve -- That Lecco and Friend killed Carla Collins for aiding a federal investigation, in violation of 18 U.S.C. §§ 1121(a)(2) and 2; and

7.    Count Thirteen -- That Lecco and Friend, together with unnamed persons, knowingly conspired to commit offenses against the United States in violation of 18 U.S.C. § 1512(c), namely, that they corruptly altered, destroyed and concealed objects with the intent to impair their integrity and their availability for use in an official proceeding, all in violation of 18 U.S.C. § 1512(k).


On August 16, 2006, the government filed notices of intent to seek the death penalty relating to each defendant respecting Counts Eleven and Twelve of the third superseding indictment.  On May 11, 2007, the jury convicted the defendants on all counts.  On May 29, 2007, the jury unanimously found that sentences of death were appropriate on Counts Eleven and Twelve as to both defendants.

Defendants' motion lists 39 separate grounds for a new trial as follows:

1. The government's removal of the only black venire member (J.P.) by peremptory challenge requires a new trial;

2. The dismissal of a venire member (A.A.) who could impose the death penalty if a defendant might be dangerous in the future requires a new trial;

3. The additional dismissal of other venire members over objection or refusal to excuse potential jurors (including but not limited to A.C., S.P., D.H. (Lecco only), G.C., J.C., K.W., R.C., M.N., S.W., R.S., B.J. and W.U.) related to the penalty to be imposed also requires a new trial;

4. The repeated contact between jury foreman B.S. and his employer during trial requires an evidentiary hearing and a new trial;

5. The refusal to grant the defendants separate trials for the guilt phase was prejudicial error;

6. The refusal to grant separate sentencing hearings to each defendant is prejudicial error;

7. The court's editing of the taped interview of Carmella Blankenship by Lieutenant Cliff Akers, which putatively excluded key points implicating Lecco as the murderer, was prejudicial error and requires a new trial for Friend;

8. The exclusion of Patricia Burton's statement, which implicated Lecco as the murderer, to her lawyer, who then passed the information on to Lieutenant Akers, was prejudicial error requiring a new trial for Friend;

9. Patricia Burton volunteered during her testimony that she took a polygraph exam, resulting in prejudicial error;

3

10.  Prejudicial error resulted from the government allowing
     Patricia Burton to falsely testify that she did not hit
     the victim with a rock, thereby causing her death;

11.  Patricia Burton was incompetent due to amnestic
     disorder and retardation, resulting in prejudicial
     error and, at a minimum, a new penalty trial is
     warranted because the jury necessarily based a death
     sentence on Patricia Burton's testimony;

12.  Charles Kinder was also incompetent due to mental
     illness and his testimony resulted in prejudicial error
     inasmuch as it was inherently unreliable;

13.  It was prejudicial error to disallow evidence regarding
     "third party guilt[,]" resulting in the jury not
     learning of J.F. Smith's confession to the murder;

14.  It was prejudicial error to exclude J.F. Smith's
     confession to burning the trailer and burying the
     victim's body, a confession which was identical to that
     of Walt Harmon, which deprived the jury of having the
     necessary information for an accurate determination of
     guilt/innocence;

15.  It was prejudicial error to exclude testimony that
     others such as Walt Harmon and J.F. Smith were suspects
     and arrested for the murder;

16.  It was prejudicial error to exclude testimony that Gab
     Frazier was a suspect who had a motive to kill the
     victim;

17.  There was insufficient evidence of Friend's involvement
     in Lecco's drug conspiracy;

18.  There was insufficient evidence that Friend caused the
     victim's death;

19.  There was insufficient evidence that Lecco caused the
     victim's death;

20.  There was no evidence indicating Valeri Friend was
     aware that the victim was a federal informant;

4

21.  It was prejudicial error to refuse to instruct the jury regarding Lecco's theory of defense;

22.  It was prejudicial error to refuse instruction regarding the statutory mitigating circumstance of "victim consent[;]"

23.  It was prejudicial error to refuse instruction on the consequences of non-unanimity;

24.  It was prejudicial error to not instruct the jury, or require findings, on residual doubt;

25.  It was prejudicial error to instruct the jury regarding all threshold mental states alleged in the third superseding indictment as to both defendants;

26.  There was insufficient evidence to support a finding that the murder was heinous, cruel, and depraved;

27.  There was insufficient evidence that the victim was killed after substantial planning and premeditation;

28.  There was insufficient evidence of the "payment or the promise of payment of anything of pecuniary value[;]"

29.  There was insufficient evidence that the victim was murdered because Lecco wanted (1) to "prevent [her] . . . from providing any additional information and assistance to law enforcement authorities regarding a federal investigation, or (2) to retaliate against the victim for having provided assistance to law enforcement authorities with information regarding the defendant's criminal activity, or both;

30.  The aggravating circumstance of "substantial planning and premeditation" is unconstitutional;

31.  The aggravating circumstance of "heinous, cruel and depraved" is unconstitutional;

32.  The aggravating circumstance of "pecuniary gain" is unconstitutional;

33.  It was prejudicial error to sustain objections by the government during closing argument by Friend's counsel;

34. The invitation to the jurors to deliberate Friday night and/or Saturday coerced the death verdict;

35. Attorney General Gonzales required that the United States Attorney seek death sentences despite the absence of a request for permission to do so;

36. The termination of various United States Attorneys by Attorney General Gonzales, in at least one case due to disagreements over seeking the death penalty, impaired the defendants' request for reconsideration of the decision to seek the death penalty by the Department of Justice;

37. The death sentences are disproportionate as compared to the life-or-less sentence received by co-defendant Pat Burton;

38. The death sentences are disproportionate when compared to defendants in other cases;

39. For all the reasons previously stated, the death penalty is unconstitutional and the sentences of death should be set aside.

The memorandum in support of the new trial motion discusses few of the foregoing arguments.[1]  Of the 39 arguments offered, the memorandum in support discusses only three, namely (1) the refusal to grant severance during the guilt phase, (2)

---

[1]Defendants explain the default as follows:

> In order to keep within the time period ordered by the Court counsel has not be [sic] able to provide legal discussion for all of the points raised in the . . . [new trial motion] . . . .

(Def. Lecco's Memo. in Supp. at 1).  Defendants' motion for a new trial was due June 9, 2007.  At defendants' request, the applicable time period was extended twice, resulting in a 27 day extension of time.

the refusal to instruct the jury regarding Lecco's theory of defense instruction, and (3) the refusal to instruct concerning the consequences of non-unanimity.

II.

A.   Governing Standard

Rule 33(a) provides that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); United States v. Lentz, 383 F.3d 191, 219 (4th Cir. 2004). A district court, however, "'should exercise its discretion . . . sparingly' and . . . should do so on evidentiary grounds 'only when the evidence weighs heavily against the verdict.'" United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (quoting United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997)).

In particular, a reviewing court addressing a sufficiency challenge "must view the evidence in the light most favorable to the government and inquire whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997); see United States v. Higgs, 353 F.3d

7

281, 313 (4th Cir. 2003) (holding that a conviction must be
sustained if there is "'evidence that a reasonable finder of fact
could accept as adequate and sufficient to support a conclusion
of a defendant's guilt beyond a reasonable doubt'") (quoting
United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en
banc)).  The fact finder, not the court, assesses the credibility
of witnesses and resolves any evidentiary conflicts. See Wilson,
118 F.3d at 234; United States v. Arrington, 719 F.2d 701, 704
(4th Cir. 1983). "Those functions are reserved for the jury, and
if the evidence supports different, reasonable interpretations,
the jury decides which interpretation to believe." Wilson, 118
F.3d at 234 (internal quotation marks omitted).


B.   Analysis


        Regarding the first assignment of error relating to the
government's peremptory challenge of the only African-American
venire member, the government offered a race-neutral reason for
its decision.  The court adopts and incorporates herein its bench
findings and ruling respecting the defendants' challenge pursuant
to Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny.  The
court discerns no error.


8

Regarding assignments of error 2 and 3, the court relies upon its bench findings and rulings respecting each juror named by the defendants in their new trial motion.  The record adequately reflects the reasons justifying the discretionary dismissal or retention of each potential juror.  The court discerns no error.

Regarding assignment of error 4, the court made known to counsel the employer-employee issue relating to B.S. after learning of the employer's concerns from the jury administrator. The record reflects the circumstances were fully disclosed to counsel who, although offered the weekend to consider the matter more fully, informed the court after time for deliberation that no further action was necessary.[2] (Tr. at 763-64, 822).  The court discerns no error.

---

[2]The provisional transcript reflects the following statements of counsel when called upon to disclose their position on the matter:

> MR. McVEY:  And at this point, I don't believe any of us feel that anything should specifically be done with him until he, himself, you know, brings the problem to our attention.

> THE COURT:  Is that the sense of the group?

> MR. McNALLY:  Yes, Your Honor, it is.

> MR. McCAMIC:  Yes, Your Honor, that's correct.

> THE COURT:  All right.  We'll leave it at that.

(Tr. at 822).

9

      Regarding assignments of error 5 and 6, the court adopts and incorporates herein its January 29, 2007, memorandum opinion and order denying Lecco's motion to sever and Friend's motion for a separate trial.  As noted by the government, one searches the record largely in vain for the development of antagonistic defenses at trial.  Additionally, those studying the subject have concluded that "the current weight of authority is against severance of multiple defendants' trials at the penalty phase."  1 Molly Treadway Johnson & Laural L. Hooper, <u>Resource Guide for Managing Capital Cases</u> 45 (2005).  As the evidence came in and the defendants' theories of the case developed, it became apparent that they effectively mounted a joint trial strategy in many respects.  The court, accordingly, adheres to its position throughout that severance was inappropriate under the circumstances.  The court additionally discerns no error respecting the failure to sever at either the guilt or sentencing phases.

      Regarding assignments of error 7 through 10, the court adopts and incorporates herein its bench findings and rulings.  Based upon those findings and rulings, and the additional reasons offered by the government at paragraphs 9-12 of its response brief, the court discerns no error based upon the challenged evidentiary rulings.

Regarding assignments of error 11 and 12, the commentators are in accord that Rule 601, and indeed the Federal Rules of Evidence generally, view with disfavor the categorical exclusion of witnesses on mental competency grounds.  3 Christopher B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 233 (2d ed. 2006); Steven Goode & Olin Guy Wellborn, <u>Courtroom Handbook Fed. Evid.</u> § 601 (2007) ("Rule 601 abolishes all objections to a witness's competency except those specifically mentioned in the rules of evidence. It thereby eliminates such grounds for incompetency as age, religion, conviction of a crime, interest, and mental capacity, treating these (with the exception of religion) as bearing on a witness's credibility."); 148 A.L.R. 1140 (1944 and supp. 2007)("The trend . . . clearly indicates that there is now little question as to the competency of a mentally deficient witness, if he is capable of appreciating the nature of an oath and able to answer questions which tend to establish a connected pattern, with a reasonable degree of accuracy.").

Our court of appeals takes a similar approach.  <u>See</u> <u>Lockard v. Parker</u>, 164 F.2d 804, 805 (4th Cir.  1947) (noting witness showed symptoms of a mental disturbance and was actually committed to a mental hospital and diagnosed at one point with

11

paranoid schizophrenia but observing that "[A] person of unsound
mind is not necessarily an incompetent witness but may be
permitted to testify if he has sufficient understanding of the
nature of an oath and is capable of giving a correct account of
what he has seen and heard."); see also United States v. Lightly,
677 F.2d 1027, 1028 (4th Cir. 1982); United States v.
Whittington, 26 F.3d 456, 466 (4th Cir. 1994).  In view of the
liberal, governing standards, the court discerns no error in the
decision not to categorically exclude either Burton or Kinder as
witnesses.

Regarding assignments of error 13 through 15, the court
adopts and incorporates herein its bench findings and rulings.
Based upon those findings and rulings, and the additional reasons
offered by the government at paragraphs 15-17 of its response,
along with the documents incorporated therein by the government,
the court discerns no error resulting from the challenged
evidentiary rulings.

Regarding assignment of error 16, the government
contends the record reflects the court did not exclude testimony
indicating that Gab Frazier was motivated to kill the victim.
(See Tr. at 85-91).  Defendants do not reply on the point.
Accordingly, absent additional development of the matter by the
defendants, the court discerns no error.

Regarding assignment of error 17, the court notes testimony from Michael Looney, Brenda Hinkle, Gary Collins, and Zetta Lockard reflecting Friend's involvement in the charged controlled substance conspiracy.  Michael Looney testified as follows:

> Q.  Have you ever seen the defendant Valerie Friend at the Pizza Plus?
>
> A.  Yes.
>
> Q.  Have you ever seen her going into the back room at the Pizza Plus?
>
> A.  Yes.
>
> Q.  About how many times?
>
> A.  Once, twice -- once, I think.  Twice.
>
> Q.  Who was in the back room there at the time she went in?
>
> A.  I think Porgy was.

(Tr. at 174; see 176-77).  The testimony came amid Looney recounting the drug dealing activity occurring at the Pizza Plus by Lecco, Jake Hatfield, and Pat Burton and that the controlled substances that were sold were retrieved from Lecco's room at the back of the restaurant.  (Id. at 173-76).

Regarding Ms. Hinkle, the following testimony was adduced:

> Q.  Do you recall where in the Pizza Plus you saw the larger one, where in that room?

13

A.  There's like a brown cabinet in his room, a large
cabinet.

Q.  Uh-huh.

A.  Usually he had stuff in it.

Q.  What about the smaller pistol?

A.  Under the pillow.

Q.  Is that the same pillow under which he had the
cocaine?

A.  Yeah, the coke.

Q.  Do you know a woman named Valerie Friend?

A.  Yes, sir.

      .   .   .   .

Q.  Have you ever seen Ms. Friend at the Pizza Plus?

A.  Yes, sir.

Q.  About how many times?

A.  About ten or twelve times I've seen her in the
back.

Q.  When you say in the back, where in the back?

A.  Sometimes in the kitchen and sometimes in the back
room talking to Porgy.

Q.  At what time period . . . -- when you saw Ms.
Friend at the Pizza Plus, about when was that?

A.  Well, on and off just several times, you know,
throughout a couple of years.  And then a lot more in
2005.

(Id. at 233).

14

In addition to this testimony, Gary Collins testified that Friend would secure controlled substances for him from Lecco "out of the Pizza Plus . . . ."  (Id. at 463; see also Id. at 464-66).  Ms. Lockard added that she provided Friend money for cocaine on 8-10 occasions, which Friend then used to purchase cocaine from the Pizza Plus.  (Id. at 482, 484-86).  Taken in its entirety, and in the light most favorable to the government, the evidence demonstrates that patrons gave Friend money to purchase small amounts of cocaine from Lecco in the back room of the Pizza Plus.  Additionally, however, Friend's most substantial contribution to the conspiracy, as alleged by the government, "was the killing of Carla Collins."  (Govt.'s Resp. ¶ 19).

The trial record in its entirety contains evidence that a reasonable finder of fact could accept as adequate and sufficient to support a finding of Friend's guilt as to Count One beyond a reasonable doubt.  The court concludes the assignment of error is meritless.

Assignments of error 18 and 19 contend there was insufficient evidence to support a finding that Friend or Lecco caused the victim's death.  Among other witnesses, the jury appears to have credited the testimony of Patricia Burton

15

respecting Lecco's and Friend's involvement in the murder.
Burton testified at length concerning Lecco's direction to her,
and to Friend through her, to kill the victim.  (Tr. at 520-37,
538-44, 549).

There was additional testimony as well that Friend
carried through on the request.  (Id.)  As noted, other witness
testimony also supports the general account that Lecco ordered
the murder and Friend carried the plan to fruition.  (See, e.g.,
tr. at 638-48, 652 (testimony of Carmella Blankenship); tr. at
269-71, 295-96, 300-01 (testimony of Charles Hatfield)).   The
trial record in its entirety contains evidence that a reasonable
finder of fact could accept as adequate and sufficient to support
a finding that both Friend and Lecco caused the victim's death
beyond a reasonable doubt.  The court concludes the assignments
of error are meritless.

Assignment of error 20 challenges the finding that
Friend was aware that the victim was acting as a federal
informant at the time of her death.  Assignment of error 29
essentially challenges the sufficiency of the evidence concerning
Lecco's desire to murder the victim to prevent her further
cooperation with law enforcement or to retaliate against her for
such cooperation.

Jake Hatfield testified of Friend's statement that the victim was killed because she was wearing a wire.  (Tr. at 295). Taken in the light most favorable to the government, Friend also was aware of the law enforcement search of the Pizza Plus conducted in part by federal agents.  (Tr. at 705-06 (testimony of Walter Harmon concerning his knowledge of the search warrant executed at the Pizza Plus); see generally tr. at 902-07 (government summary of trial evidence supporting conspiracy members' knowledge of the victim's status)).  This same evidence supports the view that Lecco was likewise aware of the federal nature of the investigation.  Indeed, Michael Kitchen testified that Lecco advised him that the victim had been "working for the feds."  (Id. at 353).

Although much of the evidence is circumstantial, the trial record in its entirety contains evidence that a reasonable finder of fact could accept as adequate and sufficient to support a finding that Friend was aware that the victim was a federal informant.  The same is true respecting Lecco's desire to murder the victim to prevent her further cooperation with law enforcement or to retaliate against her for that cooperation. The court, accordingly, concludes those assignments of error are meritless.

17

Assignment of error 21 challenges the refusal to instruct the jury concerning a proposed theory of defense instruction submitted by Lecco's counsel.  As noted by the government, the one-page instruction constitutes factual argument.  The court discerns no error arising from its refusal of the tendered instruction.

Regarding assignments of error 22 through 25, the court relies upon its bench findings and rulings respecting each alleged error.  The record adequately reflects the reasons justifying the respective decisions, and the court discerns no error in its rulings.

Regarding assignments of error 26 through 28, the trial record in its entirety contains evidence that a reasonable finder of fact could accept as adequate and sufficient to support findings on each of the challenged aggravators beyond a reasonable doubt.  The court concludes the assignments of error are meritless.

Regarding assignments of error 30 through 32 and 39, the court adopts and incorporates herein it April 5, 2007, memorandum opinion and order upholding the constitutionality of the Federal Death Penalty Act.  <u>United States v. Lecco</u>, No. 2:05-

107, slip op. at 4 (S.D. W. Va. Apr. 5, 2007) ("Absent . . .
authority, the court is unwilling to strike down an Act of
Congress that has consistently withstood various constitutional
challenges. See, e.g., United States v. Fulks, 454 F.3d 410, 438
(4th Cir. 2006) ('For these reasons, the evidentiary standard of
the FDPA withstands constitutional scrutiny.').")  The court,
accordingly, concludes that the assignments of error are
meritless.

        Assignment of error 33 contends the court committed
prejudicial error in sustaining objections by the government
during closing argument by Friend's counsel.  The objections were
well taken.  Counsel for Friend attempted to argue (1) that many
individuals had previously been released from death row as a
result of jury error, (2) that it was unfair to execute Friend
when gang leaders and serial killers receive life sentences, and
(3) that the government trial team would not be disappointed by a
life sentence.  The court discerns no error.

        Assignment of error 34 contends the court coerced a
death verdict by inviting the jurors to continue their
deliberations on Friday, May 25 and Saturday, May 26.  After
being offered the option to deliberate, the jury voted and
determined it would return to deliberate on Tuesday, May 28 after
several juror expressed concerns with pre-ordained personal

                        **19**

commitments.  Noting those commitments, the court then observed
as follows:

> [I]n any event, those are commitments enough to be
> persuasive.
>
> You added the further statement [in your written
> response to the court]: Is there a reason for late
> evening deliberation or Saturday deliberation?  Please
> explain.
>
> I think it would be apparent to all of you that
> we're looking at a long weekend, and coupled with the
> holiday on Monday, and, of course, there is some value
> for you to continue deliberations while matters are
> fresh . . . .
>
> [O]f course, there would be no point in deliberating
> this evening unless you were fairly close to a verdict.
> And I think from your answers, that you've given me
> enough of an insight that it persuades me to find the
> better course to be to have you come back on Tuesday
> morning . . . .
>
> And so, that's what we'll plan to do, is to have
> you back at 9:30 on Tuesday morning to resume your
> deliberations.  And I hope that is satisfactory to the
> rest of the jurors as well.  And I see at least a few
> heads nodding that hadn't answered before and a few
> smiles in addition to that.

(Tr. at 5-6).  The court discerns no error.

Assignments of error 35 through 36 relating to Attorney
General Gonzalez do not in their abbreviated form approach the
showing required to vacate the verdict.  The court, accordingly,
rejects the arguments.

Assignments of error 37 and 38 contend the death
sentences in this case are disproportionate when compared to the

lesser sentence received by Pat Burton and defendants in other cases.  As noted by our court of appeals, "[a] criminal sentence violates the Equal Protection Clause only if it reflects disparate treatment of similarly situated defendants lacking any rational basis."  United States v. Pierce, 409 F.3d 228, 234 (4th Cir. 2005) (citing United States v. Roberts, 915 F.2d 889, 891 (4th Cir. 1990)).  Defendants have not made any attempt to demonstrate a rational basis is lacking for the ultimate sanctions to which they are subject versus sentences received by other defendants.  The court, accordingly, discerns no error.

III.

Based upon the foregoing analysis, the court ORDERS that defendants' new trial motion be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  November 27, 2007

John T. Copenhaver, Jr.
United States District Judge

21