UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA

v.                                CRIMINAL ACTION NOS. 2:05-00107-01
                                                       2:05-00107-02

GEORGE LECCO and
VALERI FRIEND


MEMORANDUM OPINION AND ORDER


        Pending are (1) defendant George Lecco's motion
pursuant to Federal Rule of Criminal Procedure 14 to sever his
trial from that of co-defendant Valeri Friend, filed July 24,
2009, and (2) defendant Friend's motion for guilt and/or penalty
proceedings and deliberations and verdicts separate from co-
defendant Lecco on retrial, filed the same date (referred to
jointly as "defendants' severance motions").


                                I.


        On June 3, 2009, a grand jury returned a Twelve-Count,
Fourth Superseding Indictment alleging the following criminal
offenses:

        Count One:  Charging Lecco and Friend in a conspiracy
        to distribute cocaine, in violation of 21 U.S.C. § 846.

Count Two:  Charging Lecco with the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Counts Three and Four: Charging Lecco as a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a)(2).

Counts Five through Eight:  Charging Lecco with distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Count Nine: Charging Lecco and Friend murdered Carla Collins with a firearm during and in relation to a conspiracy to distribute cocaine, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 2.

Count Ten:  Charging Lecco and Friend with witness tampering by killing Collins, in violation of 18 U.S.C §§ 1512(a)(1)(C), 1512(a)(3)(A), and 2.

Count Eleven: Charging Lecco and Friend with witness retaliation by killing Collins, in violation of 18 U.S.C §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.

Count Twelve: Charging Lecco and Friend with a conspiracy to destroy and conceal evidence in violation of 18 U.S.C. § 1512(k).

The Fourth Superseding Indictment also contains a Notice of Special Findings as to both defendants, reflecting the United States' intention to pursue a sentence of death as to each.  Defendants now seek a severance order to avoid the prejudice that they contend will result from a joint trial.  They seek the same relief in order to assure that they each are assured of an individualized determination of the appropriate penalty should the jury find either of them guilty of the capital counts.

2

II.

A.    General Standards Governing Severance

        Federal Rule of Criminal Procedure 8(b) provides that "defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Our court of appeals has observed that "[b]arring special circumstances, individuals indicted together should be tried together."  United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981).

        There is a presumption that co-defendants will be tried jointly, and the presumption applies equally to conspiracy cases. Zafiro v. United States, 506 U.S. 534, 537-38 (1993); United States v. Najjar, 300 F.3d 466, 473 (4th Cir. 2002); United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir. 1999).  Indeed, the court of appeals has observed the presumption is particularly apropos in the conspiracy setting.  United States v. Parodi, 703 F.2d 768, 779 (4th Cir. 1983); United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)(stating "the well-established principle that defendants who are charged in the same criminal conspiracy should be tried together.").

Rule 14(a), Federal Rules of Criminal Procedure, however, permits severance "[i]f the joinder . . . appears to prejudice a defendant . . . ." Fed. R. Crim. Proc. 14(a). In making the severance determination generally, the focus is on whether the failure to sever will result in the compromise of a specific trial right of one of the defendants or prevent the jury from making a reliable judgment concerning guilt or innocence. Zafiro, 506 U.S. at 539; Najjar, 300 F.3d at 473. The mere fact that severance might result in a better chance of acquittal, or that the evidence against one defendant is stronger or more inflammatory than as to another, is an insufficient basis for ordering separate trials. See Najjar, 300 F.3d at 473; United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001); Reavis, 48 F.3d at 767; Akinkoye, 185 F.3d at 197.

With respect in particular to antagonistic defenses, our court of appeals has observed as follows:

> The presence of conflicting or antagonistic defenses alone does not require severance, however. We note that "[t]he mere presence of hostility among defendants . . . or a desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials." The rule requires more than finger pointing. There must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other . . . or "that the jury will unjustifiably infer that

4

<u>this conflict alone demonstrates that both are guilty.</u>"
<u>Najjar</u>, 300 F.3d at 474 (citations omitted) (emphasis added); <u>see also</u> <u>United States v. Smith</u>, 44 F.3d 1259, 1266-67 (4th Cir. 1995) ("Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials.'") (quoted authority omitted); <u>United States v. Ricks</u>, 882 F.2d 885, 894 (4th Cir. 1989) ("The mere existence of antagonistic defenses among defendants is insufficient to require separate trials. Rather, a defendant must establish that the asserted conflict is so prejudicial that he will be denied a fair trial if tried jointly with his co-conspirators."); <u>United States v. Spitler</u>, 800 F.2d 1267, 1271-72 (4th Cir. 1986); <u>United States v. Ferguson</u>, 778 F.2d 1017, 1020 (4th Cir. 1985) (noting "the independent evidence of the guilt of both defendants was so strong that any conflict in defenses cannot be said to have resulted in their convictions."); <u>United States v. Becker</u>, 585 F.2d 703, 707 (4th Cir. 1978); <u>see also</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 538 (1993).

**B.    Analysis**

        In considering the propriety of severance, the court
has taken account of, <u>inter alia</u>, the rights of the defendants,
society's interest in convicting only the guilty, society's
interest in imposing the death sentence sparingly on an
individualized basis, and the efficient administration of
justice.  In contrast to the circumstances surrounding the denial
of defendants' first requests for severance on January 29, 2007,
more specificity and additional argument is now offered
concerning the antagonistic nature of the defense cases and the
special impact presented by the capital nature of this
prosecution.

        Regarding the defendants' rights, and contrasted with
the spotty and speculative assertions in their severance briefing
in 2006, the defense theories at a joint retrial will present the
jury with an essentially irreconcilable conflict.  The Friend
defense team will insist that co-defendant Lecco personally
killed Collins, without any involvement by Friend.  (Def.
Friend's Reply at 1 ("Friend's position is that Lecco shot and
beat the victim.")).  Defendant Lecco will counter that Collins
was killed without his knowledge or participation.  (Def. Lecco's

Reply at 1 (noting that Lecco's defense is "that he was not present at all and did not direct Friend to commit the killing.")).  In this setting, each defense team will act as a second prosecutor against the opposing co-defendant.  The choice required between the two theories presents so sharp a contrast that the jury, in crediting the core of one defense, must then necessarily disbelieve the core of the other or, worse yet, cause the jury to unjustifiably infer that the conflict alone should result in both being found guilty.  See, e.g., United States v. Allen, 491 F.3d 178, 189 (4th Cir. 2007).[1]

Additionally, the gravity of the sentence sought especially implicates the societal interest in convicting only the guilty.  The dual-prosecutor quandary is a particular concern in this regard.  In any capital proceeding, an accused convicted of the crimes charged is next faced with offering the best

---

[1]The United States asserts that "There was barely any 'finger pointing' during the [first] trial.  Certainly there was no 'stark contrast' between the two defenses."  (Resp. in Oppos. to Friend Mot. at 7).  The focus for present purposes, however, is not the evidentiary record from the first trial but the proffered defense theories for the retrial.  (See Reply of Def. Friend at 1 ("The government argues that the Court should again deny a separate guilt and a separate penalty trial because the defendants' counsel at the first trial refrained, for the most part, from attacking the co-defendant. The government misses the point.  Counsel for defendant Friend do not intend to make the same mistake again by trying to cooperate with Lecco's counsel. . . Lecco's new counsel apparently feel the same way.")).

7

possible case in mitigation so as to avoid the ultimate sanction. One statutory mitigator is found in 18 U.S.C. § 3592(a)(3), which entitles a defendant "punishable as a principal in the offense, which was committed by another" to show that his or her "participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge." Id.

In a joint trial, capital accuseds with diametrically opposed defenses, as here, may not only attempt to minimize their own role under section 3592(a)(3), but also present their mitigation case implicitly, or by design, to redound to their co-defendant's detriment. In such a scenario, a co-defendant, in effect, locks arms with the prosecutor, stressing the aggravators applicable against the adversary co-defendant, and may even advocate other aggravators unencumbered by the notice procedures found in 18 U.S.C. § 3593(a) that are applicable to the prosecutor alone.[2]  Such an approach seems at odds with Congress'

_____

[2]Section 3593(a) provides as follows:

(a) Notice by the government. -- If . . . the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

(continued...)

reticulate effort, through the Federal Death Penalty Act
(`"FDPA"), to assure the fairest, most orderly, and comprehensive
presentations by the prosecution and defense to aid the capital
jury in discharging its most solemn of duties.

        In assuring that only those most deserving of a capital
sentence actually receive it, society benefits from allowing a
defendant to make the best case in mitigation possible to a fact
finder who has under consideration that defendant alone.[3]  This
one-on-one adversarial approach more faithfully implements the
apparent intention of the FDPA, and the jurisprudence of the
Supreme Court, that a capital defendant receive from the jury an

_____

[2](...continued)
        (1) stating that the government believes that
        the circumstances of the offense are such
        that, if the defendant is convicted, a
        sentence of death is justified under this
        chapter and that the government will seek the
        sentence of death; and

        (2) setting forth the aggravating factor or
        factors that the government, if the defendant
        is convicted, proposes to prove as justifying
        a sentence of death.

Id.

        [3]The court has considered the possibility of empaneling
separate sentencing hearing juries.  Little is gained by that
approach, however, inasmuch as both sets of fact finders would
have to be apprised of the evidence from the guilt phase in order
to discharge their duties concerning the appropriate sentence to
be imposed.

individualized decision concerning the propriety of the ultimate sanction.[4]  See, e.g., Penry v. Lynaugh, 492 U.S. 302, 317 (1989) ("Our decisions . . . have reaffirmed that the Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty."); Zant v. Stephens, 462 U.S. 862, 879 (1983) ("What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime."); Eddings v. Oklahoma, 455 U.S. 104, 112 (1982) ("[T]he fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.") (citing Woodson v. North Carolina, 428 U.S. 280, 303-04 (1976)); Romano v. Oklahoma, 512 U.S. 1, 6 (1994) ("States must ensure that sentencing decisions rest on [an] individualized inquiry under which the character and record of the individual offender and the circumstances of the particular offense are

---

[4]At the same time, the court does not suggest that joint capital sentencing hearings are per se, or even prima facie, unconstitutional.  See United States v. Tipton, 90 F.3d 861, 892-93 (4th Cir. 1996).

10

considered.") (citations and internal quotation marks omitted).[5]

        Regarding the efficient administration of justice, the
court observed as follows in its January 29, 2007, memorandum

---

[5]In this same vein, defendant Lecco offers the following,
which expresses a concern of some plausibility when considered
from his viewpoint:

> Friend is alleged to have made particularly cruel
> statements during a protracted murder that involved the
> use of a firearm and various other alleged instruments.
> See Trans[.] at 533 . . . (testimony of Pat Burton
> regarding Defendant Friend hitting Collins' in the head
> with a rock).  The government's theory with respect to
> . . . Lecco . . . is that he . . . requested and
> provided consideration for Collins' murder.  Although .
> . . Lecco is accused of serious crimes, the evidence .
> . . against . . . Friend . . . rises to a level of
> moral depravity far above anything for which . . .
> Lecco [is] accused.  Statements . . . attributable to .
> . . Friend, such as "Jesus didn't know you last night
> and he sure in the f[--]k don't know you today . . ."
> and, in response to Collins' pleas for mercy because
> she had children, "You never raised your kids . . ."
> will have a substantial negative impact on her case for
> life.  See [id.] at 529-30 (the testimony of Pat Burton
> regarding Defendant Friend's statements during Collins'
> death). . . . [A] jury will have a difficult time
> separating their opinions regarding . . . Friend's
> sentence and that of . . . Lecco, especially
> considering the overwhelming evidence of the
> heinousness of . . . Friend's alleged actions. However,
> . . . these statements and much of the testimony
> regarding the events surrounding Collins' death would
> likely not even be admissible at a sole trial . . . for
> . . . Lecco, as they were not made by him and much of
> the testimony regarding Collins' death does not involve
> him.

(Def. Lecco's Mot. to Sever at 12-13) (citations omitted).

opinion and order denying severance:

> [T]here appear to be conflicting witness accounts
> concerning who is properly chargeable with the death of
> Carla Collins.  A unitary trial, where one jury renders
> its verdict after reviewing all of the conflicting
> accounts, is thus of singular importance.

United States v. Lecco, No. 2:07-107-01 & -02, slip op. at 31

(S.D. W. Va. Jan. 29, 2007).  The same consideration applies

presently.  Balanced against this observation, however, is our

court of appeals' equally weighty recognition of the possibility

that a properly instructed jury may nevertheless impermissibly

infer that irreconcilable defenses lead to the conclusion that

both defendants are guilty.  See, e.g., Allen, 491 F.3d at 188.

In a case such as this, now involving the most antagonistic

theories of defense, an improper verdict is a genuine concern.

        The court does not minimize the fact that a severance

order will burden the United States and the public fisc with two

trials that will result in two juries and the multiple

appearances of many witnesses and the victim's family.  An

additional consideration presented in 2007, namely, that the last

tried defendant would benefit from knowing the manner of the

presentation of the prosecution case beforehand, is essentially

no longer an issue inasmuch as the cases are in a retrial

posture.  Balancing the entirety of the foregoing factors

12

together, the court concludes that (1) the proper consideration of the now sharply antagonistic defenses, and (2) the necessity of an individualized sentencing determination, can only be accommodated by separate trials.[6]  In sum, if tried jointly, defendants would be denied a fair trial and sentencing hearing.

III.

Based upon the foregoing, the court ORDERS that defendants' severance motions be, and they hereby are, granted. It is further ORDERED that the trial of defendant Friend will proceed on the presently scheduled date, with the trial as to defendant Lecco proceeding later on a date to be determined.

---

[6]The foregoing analysis obviates the need to reach any additional arguments defendants offer in favor of severance.  For example, defendant Friend contends that the following outburst by defendant Lecco in the presence of the jury during the penalty phase prejudiced her and that severance would prevent a recurrence:

THE DEFENDANT LECCO:  Your Honor --

[COUNSEL FOR DEFENDANT LECCO]:  Sit down.

THE DEFENDANT LECCO:  Your Honor, I was denied the right to testify in my own behalf and many other things, and I would . . . .

(Trans. at 2548-49).  The court immediately ordered a recess but defendant Lecco's spontaneous comments prompted one juror to query the Court Security Officer as follows: "'Is that normal?'" (Id. at 2564).

The Clerk is directed to forward copies of this written opinion and order to the defendants and all counsel of record.

DATED:  September 3, 2009

John T. Copenhaver, Jr.
United States District Judge

14