IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Criminal Action No. 2:05-00107-1 |
| : | |
| GEORGE M. LECCO, : | |
| Defendant  : | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE AS TO VERBAL EXCHANGES
AMONG CARLA COLLINS, PATRICIA BURTON, VALERIE FRIEND
AND CARMELLA BLANKENSHIP DURING THE KILLING OF CARLA COLLINS**

Conspicuously, the government fails to acknowledge, much less address, Lecco's first argument -- that the probative weight of the statements at issue is substantially outweighed by its prejudicial affect. Rather, notwithstanding Fed.R.Evid. 403, the government appears to believe that the issue of admissibility may be resolved solely by an assessment of its "relevance." Of course, that is not the case.

Although partially conceding the point as to all the contested statements but those in which Burton tells Collins at whose direction Collins is being killed -- only partially, because the government reserves the "right" to introduce any of the statements in response to the impeachment of Burton, Friend and Blankenship[1] -- the

---

[1] Irrespective of this reservation, the government should be precluded from raising these matters until the Court is able to address them out of the presence of the jury.

1

government asserts, without authority, that the statements by Burton to Collins about Lecco instigating the killing are relevant because they "tend to prove the identity of the assailant and the motive for the murder. . . ." (Response of the United States, p. 2) "The same statements circumstantially tend to prove the existence of the cocaine conspiracy, the substantive cocaine charges, as well as the firearm charges contained in the indictment." (*Id.*)  That is the extent of the government's analysis of the relevance of Ms. Burton's statements.

    In fact, the statements by Burton to Collins prove nothing other than the fact that, as Lecco noted in his Motion, Burton chose to rub Collins' face in it as she was killing her.  The probative evidence is not what Burton told Collins after the dye was cast, but the testimony which Burton provides at trial as to what Lecco allegedly told her.  And, of course, at the first trial, Burton denied that Lecco actually asked her to kill Collins.  Rather, she testified that she inferred that he wanted it done because he allegedly gave her two guns and told her to "take care of her."  Moreover, the government seeks to include in the evidence Burton's own speculations to Collins about the reasons Collins should be killed (and, therefore, inferentially, why Lecco wanted it) -- that Collins must have told law enforcement since only she and Burton knew about Lecco's continuing drug dealing and firearms possession, and that Burton herself had not done so. (*Id*.)  Moreover, nothing in the first trial supported Burton's assertion that only she and Collins knew about the drug dealing and guns, nor does anything in Burton's statement to Collins.  Thus, the government seeks to admit statements by Burton to Collins as to the inferences drawn by Burton -- in part, unsubstantiated -- as to what Lecco wanted and why, and all it can argue in its favor is that "[t]his evidence is admissible," without

authority.

Since the government avoids any discussion of the prejudice component of Rule 403 or the FDPA's even more generous (in favor of the defendant) balancing test, the defendant will not belabor the point here. Suffice it to say that whatever minimal probative value may exist in Burton's gratuitous statements to her victim (see discussion supra) is dwarfed by the prejudice it would introduce into both phases of this capital case.

Secondly, the government asserts that the defendant has not provided any support for its argument that testimony as to Burton's statements to the victim would be hearsay, since they were not in furtherance of a conspiracy to kill Ms. Collins. The government adds that the evidence would also be admissible under Fed.R.Evid. 301(3) in that it involves a "'statement of the declarant's then existing state of mind, emotion, sensation, . . . (such as intent, plan, motive) . . .'" Response of United States at 3, n.2 (quoting Fed. R. Evid. 301(3)).

The government's characterization of the relevant co-conspirator statement case law is severely misleading.[2]  As defendant noted in his Motion in Limine,[3] and as the government has repeated, Response of United States at 4, the Fourth Circuit has clearly stated that, to satisfy the "'in furtherance" prong of the co-conspirator standard,

---

[2] The government also notes that no charge of conspiracy need be charged. Response of United States at 3.  The defendant never suggested otherwise.  Indeed, he stated it himself. Defendant's Motion in Limine at 8 (referring to the "alleged conspiracy to kill Collins" as the context for analyzing the admissibility of the statements).

[3] Defendant's Motion in Limine as to Verbal Exchanges (hereinafter Motion in Limine) at 7-8.

3

the proponent must demonstrate that the statement must be "intended to promote the conspiracy's objectives . . . .'" Motion in Limine (quoting *United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) (quoting *United States v. Shores*, 33 F.3d 438, 443 (4th Cir, 1994)).  The government, however, ignores the subsequent language in Smith: "'For example, statements made by a conspirator to a non-member of the conspiracy are considered to be 'in furtherance' of the conspiracy *if they are designed to induce that party* to join the conspiracy or *to act in a way that will assist it in accomplishing its objectives*.'" *Id*. (Emphasis added).  The government offers nothing to explain how Burton's statements to Collins furthered the conspiracy's goal of killing Collins, other than that the statements, made while the murder was in process, "[were] part of the retaliation, effectively rubbing psychological salt into the already inflicted physical wounds."[4]  Response of United States at 6.  That argument merely collapses the second prong ("in furtherance of") into the first ("during the course of"), i.e., in the words of the government, it "was part of the retaliation." (*Id*.)

The statements not only did not further the conspiracy's objective (killing Ms. Collins), it did not have the potential for doing so. *See United States v. Urbanik*, 802 F.2d 692, 698 (4th Cir. 1986) (holding that Rule 801(d)(2)(E) requires more for admission than that statement "touches upon" the conspiracy).  The government could as well have told her that the King of Siam was behind her murder for all such comments in the midst of the killing of an ambushed and defenseless Collins would

---

[4] The government effectively agrees with the defendant's point that Burton's statements to Collins "in no sense promoted the goals of the conspiracy to kill Collins. Rather, it simply advanced some personal agenda . . . to rub Collins' face in the allegation that Lecco was behind it." Motion in Limine at 9.

have advanced the goal of her killing.

The government also mistakenly relies on *United States v. Neal*, 78 F.3d 901 (4th Cir. 1996) to support its position, while correctly reciting part of its essential holding -- "that although the declarant's statements (that a drug deal would not take place due to police presence in the neighborhood) did not further the cause of a particular drug deal, they did further the cause of the conspiracy. *Neal*, 78 F.3d at 905." Response of Untied States at 4-5. That result only demonstrates the flaws in the government's argument here. The statements of the drug dealer in *Neal* plainly advanced the conspiracy's goal of not being arrested and, thereby, bringing the operation down. "Escaping apprehension and detection by police officers furthered the continued viability of the conspiracy." *Neal*, 78 F.3d at 905 (citing *United States v. Troop*, 890 F.2d 1393, 1404 (7th Cir. 1989) ("Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy")). Thus, the *Neal* Court unsurprisingly found that a "statement about police presence [to a planned purchaser] reveal[ing] the reason the deal could not take place immediately, but . . . not negat[ing] the possibility that the deal could take place at a more opportune time and thereby continu[ing] the further possibility of a sale" between the parties was "in furtherance of" the conspiracy. *Neal*, 78 F.3d at 905. Rather than supporting the government's all-encompassing definition of "in furtherance of," *Neal* provides a definition which, regardless of what size label is appended to it, is plainly tethered to the objectives of the conspiracy.

No such apparent conspiratorial goal exists here. Burton could not have intended that the information would make Ms. Collins more compliant with her killers'

demands, since they were not making any demands of her or seeking her cooperation. Nor was avoiding detection an issue. The government's only suggestion is to redefine the goal of this conspiracy to include not only the murder of Ms. Collins, but more generically, retaliation against her. Even if that transparent manipulation of language were legitimate, however, the government still can not avoid the fact that telling Ms. Collins that Lecco wanted her killed and how Burton knew that Collins was cooperating with law enforcement against Lecco could do nothing to further such an agenda.

Moreover, the government's argument proves too much, since it would equally justify the admission of all the contemporaneous statements of Burton, Friend and Blankenship. Preventing Ms. Collins from praying and belittling her relationship with her children can be characterized as "retaliation" as much as information about who was behind her demise. Such an expansive definition of the "in furtherance" prong contained in Fed.R.Evid. 801(d)(2)(E) would swallow any distinction between it and the "during the course of" prong, and render all statements made during a conspiracy admissible.

In *Smith*, the Fourth Circuit provides no analysis as to why the statements at issue were "in furtherance of" the conspiracy. *See* 441 F.3d at 262. Suffice it to say that, in a drug conspiracy case, the statements were by members of that conspiracy to one another about the delivery of those drugs, and the source. As to the latter, since no objection was made at trial, the Court analyzed the decision to admit it under the "plain error" doctrine. While the analysis is absent, the justification for the Court's rejection of the defendant's complaints on appeal is not difficult to fathom.

The Fifth Circuit's decision in *United States v. Robinson*, 367 F.3d 278 (5th Cir.

2004), upon which the government relies, Response of United States at 5, likewise provides no support for the government's position. While the Court did affirm the admission of a co-conspirator's statement as to a threat to the victim that the three co-conspirators were going to kill him, and the reason for it, *see id.* at 292, the Court based its holding on the fact that the declaration put the victim "under [the killer's] immediate control as the three men forced him to go along to the location where they intended to kill him." *Id*. Thus, the statement furthered their gaining "immediate control" of the victim, as they forced him to another location. Conspicuously, the government omits from its discussion of the case any mention of this essential part of the holding. No such furtherance of the conspiracy exists here. Ms. Collins was told the alleged reason for her predicament after she had already been shot by Burton, following which she had fallen down and been "helped" to the bedroom by Burton and Friend. (Summary of Valerie Friend Debriefing, pp. 4-5). She was already under the conspirators' control and she was in the process of being killed. She was bleeding from her head wound. Also according to Friend, once in the bedroom, *Collins asked* why she had been shot, to which Burton said "Lecco wanted it." (*Id*. at 5). Thus, the comment was not even initiated by the conspirators to further their objective.

      Moreover, the case upon which the Fifth Circuit relied in Robinson, its on decision in *United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000), further demonstrates the fallacy of the government's argument. In addition to the language from Phillips quoted by the Court in *Robinson* and by the government in its Response (at 5) -- that "'the in furtherance' requirements is not to be construed too strictly lest the purpose of

7

the exception be defeated'" -- the Court stated that "a statement is not in furtherance of a conspiracy unless it advances the ultimate objects of the conspiracy.'" 219 F.3d at 417 (internal citation omitted). Indeed, the statement at issue in *Phillips* -- a description of the scheme by a conspirator to her daughter in order to "exact sympathy -- obviously furthered the conspiracy by assuring that the conspirators [would] not be revealed and the conspiracy brought to an end." *Id.*

Finally, *Urbanik*, *supra*, cited by the government as the "best illustration of why Burton's statement satisfy the "in furtherance requirement' . . " (Response of the United States at 7), also lends no support to the government's position. The fact that a categorically different statement, made in an entirely different context does not qualify for admission under Rule 801(d)(2)(E) says nothing about whether the statements at issue here qualify. That the bar for admission of a co-conspirator's statement does not reach as low as the "idle chatter" in *Urbanik*, 801 F.2d at 698, does not mean that every statement more connected to a conspiracy, no matter how minimally, is admissible under the Rule, nor does it diminish the significance of the "in furtherance" requirement.[5] Indeed, in *Urbanik* itself, the Fourth Circuit stated that that requirement "'is designed both to assure their reliability and to be consistent with the presumption that the coconspirator would have authorized them. . . (citations omitted)'" 801 F.2d at

---

[5] Similarly, none of the cases cited in footnote 4 of the government's Response (at 7) supports its position here. Each involves a circumstance that plainly advances the goals of he conspiracy, whether it relates to the recruitment of new members, or concealment, or furthering the activities of the conspiracy. The point is conceded, but it says nothing about statements such as those at issue here -- where they can do nothing to further the goal of murder. The government's inability to find a case with comparable circumstances speaks volumes.

698 (quoting *United States v. Lieberman*, 837 F.2d 95, 103 (2nd Cir. 1980)) .

## CONCLUSION

The Court should (1) hold an evidentiary hearing to determine what the actual testimony of Friend and Burton would be on the points discussed above; (2) Order that the evidence of the statements identified in Defendant's Motion in Limine (at 1) and the statement identified by the government in its Response (at 2-3), which Friend attributes to Burton, and (prohibit the government from raising any of these statements as impeachment or rebuttal without first obtaining the Court's permission).

GEORGE LECCO

By: /s/ Gerald T. Zerkin
      Counsel

Gerald T. Zerkin
Capital Resource Counsel
VSB # 16270
Amy L. Austin
WVSB # 6286
VSB # 46579
Assistant Federal Public Defender
Counsel for Defendant
701 East Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800
(804) 648-5033 (fax)
gerald_zerkin@fd.org
amy_austin@fd.org

Brian J. Kornbrath
Federal Public Defender
Federal Public Defender's Office
230 West Pike, Suite 360
Clarksburg, WV 26301
brian_kornbrath@fd.org

*Counsel for Defendant Lecco*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

Philip H. Wright                                  U.S. Attorney's Office

P.O. Box 1713
Charleston, WV 25326-1713
304/345-2200
Fax: 304/347-5104
philip.wright@usdoj.gov

R. Gregory McVey
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326-1713
304/345-2200
Fax: 304/347-5104
greg.mcvey@usdoj.gov

Gary A. Collias
P.O. Box 70007
Charleston, WV 25301-0007
304/344-3653
Fax: 304/345-3083
gacollias@citynet.net

Kevin M. McNally
McNally & O'Donnell
P.O. Box 1243
Frankfort, KY 40601
502/227-2142
Fax: 504/227-4669
kmcnally@dcr.net

Brian J. Kornbrath
Federal Public Defender
Federal Public Defender's Office
230 West Pike Street, Suite 360
Clarksburg, WV 26301
brian_kornbrath@fd.org

      /s/   Gerald T Zerkin
Gerald T. Zerkin
VSB # 16270
Capital Resource Counsel
Amy L. Austin
WVSB # 6286
VSB # 46579
Assistant Federal Public Defender
Counsel for Defendant
701 East Broad Street, Suite 3600
Richmond, Virginia 23219
(804)343-0800
gerald_zerkin@fd.org
amy_austin@fd.org

10