UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
    Plaintiff,

        V.                      CRIMINAL ACTION NO. 2:05-00107

GEORGE M. LECCO,
        also known as "Porgy"
        Defendant.

**DEFENDANT'S RESPONSE TO UNITED STATES
MOTION IN LIMINE TO EXCLUDE TESTIMONY OF
ASSISTANT UNITED STATES ATTORNEY AND FEDERAL PUBLIC DEFENDER**

Comes now, the defendant, George M. Lecco, through counsel, providing his response in opposition to the government's motion in limine to exclude the anticipated trial testimony of defense witnesses. These witnesses include two Assistant United States Attorneys, both John Frail and Karen Schommer, as well as Federal Public Defender Mary Lou Newberger.[1]

A cornerstone of the defense in this matter centers on the defendant's lack of motive in soliciting the murder of Carla Collins. Following a search of the Pizza Plus restaurant on February 16, 2005, the defendant agreed to cooperate with law enforcement in the investigation of other cocaine suppliers in the Mingo County, West Virginia area. This cooperation was enhanced by the on-going participation of Carla Collins as a police informant. Ms. Collins clearly indicated to law enforcement that her participation as a police informant was solely for the purpose of benefitting the defendant in the hope that he later receive a lower federal sentence.

---

[1] This response serves as notice pursuant to United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951); Section 1-6.000 of the United States Attorney Manual; and 28 C.F.R. §16.21 et seq. that defendant seeks the trial testimony of Assistant United States Attorney Karen Schommer as well. A summary of Ms. Schommer's anticipated trial testimony is included in the body of this pleading.

To that end, both the defendant and Ms. Collins worked in close conjunction by supplying the police with information.  Over the course of six weeks following the Pizza Plus search, the defendant provided details concerning his own drug dealing activities; the activities of his supplier (Kitchen); and the on-going cocaine dealing activities of Frazier family and Gary Stepp.  Ms. Collins as well provided the same detailed information concerning the defendant; Kitchen; the Fraizers; and Stepp.  In addition, Ms. Collins attempted several controls drug buys that targeted those associated with the Fraizers. Given the close relationship and common goals shared by the defendant and Ms. Collins, the defendant had no reason to solicit her murder as has been alleged by Patricia Burton and Valerie Friend.

As part of the instant prosecution, the government has attempted to under defendant's "lack of motive" defense.  According to police testimony, the defendant's status as a cooperating individual was terminated in late March or early April 2005 because of defendant's ongoing, post-search drug dealing activities.  This termination purportedly frustrated the defendant, made him suddenly suspicious of Ms. Collins who he now suspected was an informant against him, and caused defendant to later solicit her murder.

To date, the only testimony provided by the government supporting a claim that defendant was terminated as a cooperating individual stems from T.F.C. Anthony Perdue.  At the previous trial, Perdue testified that he informed the defendant that he was terminated and that Perdue "would call John Frail, to tell him that we couldn't use [defendant's] cooperation any longer."  Trial Transcript, page 81-82.

The defendant has both a Sixth Amendment constitutional right to present a defense, as well as the right to rely upon otherwise admissible evidence deemed relevant.  See:  Chambers v.

2

Mississippi, 410 U.S. 284 (1973); Rule 401 of the Federal Rules of Evidence.  There are

presently five distinct avenues available to the defendant that make it more probable than not that

Purdue never terminated defendant's status as a cooperating informant before his arrest.  Each is

clearly admissible as relevant evidence.  These include:

1.  No Documentary Evidence From Law Enforcement Noting Defendant's Termination

as Cooperating Individual.  Law enforcement authorities responsible for defendant's

investigation were meticulous in maintaining written recordings of all contacts with cooperating

individuals.  This included written reports documenting when the informants were first

approached and face-to-face and telephone contacts thereafter.  To date, the government has

provided no documentation, prepared in March or April 2005, supporting the claim that the

defendant was terminated as a cooperating individual because of his on-going drug dealing

activities.

2.  Anticipated Testimony of Assistant United States Attorney John Frail.  Mr. Frail is

expected to testify that he has no recollection of ever receiving a call from Perdue that

defendant's cooperating individual status was terminated due to on-going drug dealing activities.

Further, Mr. Frail is expected to testify that he has no file documentation prepared which records

this supposed event.  Such an event is sufficiently noteworthy that one would expect some

recollection of the event and some file notation.

3.  Anticipated Testimony of Assistant United States Attorney Karen Schommer.

Likewise, Ms. Schommer is expected to testify that she too has no recollection of ever learning

from Perdue that defendant was terminated as an informant based on continued drug sales.  As

well, Ms. Schommer is expected to testify that she has no file documentation or notes that record

Perdue's contact concerning defendant's termination.

4. Anticipated Testimony of Federal Public Defender Mary Lou Newberger. Ms. Newberger was appointed to represent the defendant once his grand jury target letter issued February 17, 2005. Ms. Newberger is expected to testify that she was never contacted by the prosecutors with information that the defendant's cooperation status was terminated. Rather, in May of 2005, Ms. Newberger was merely told that the defendant "had been blowing off" law enforcement since February. While the government may not have wished to disclose allegations of defendant's ongoing alleged drug dealing activities to defense counsel, the fact that defendant's cooperation status was actually terminated would likely be provided.

5. No Police Action Following Defendant's Purported Termination. Following the search of defendant's business on February 16, 2005, he was not arrested because of his desire to cooperate with law enforcement in targeting other cocaine suppliers. If defendant's cooperation was, in fact, terminated in late March or early April 2005, as Purdue contends, then there would be no reason to delay defendant's arrest any longer. Future benefits from defendant's continued cooperation were nonexistent; the police clearly had probable cause to effect defendant's arrest; and the police had credible evidence of defendant's ongoing drug dealing activities. This information concerning ongoing drug sales came from both third parties and defendant's own admissions. Nonetheless, nearly one month passed, until May 3, 2005, before defendant was arrested. Police documentation indicates that the arrest was made only after Michael Looney complained that the defendant was threatening him for being a police informant. According to Perdue's investigative report, the defendant was arrested by federal complaint only one day after Looney's complaint was received.

These blocks of evidence collectively provide relevant testimony undercutting the claim made by Perdue that defendant's cooperation status was terminated prior to his arrest.  This Court should find that defendant has made a sufficient showing so as to allow the anticipated trial testimony of the witnesses as outlined above.  Relevancy is a fairly low evidentiary threshold, and the government should not be allowed to exercise its executive authority in refusing defense access to these federal prosecutors as witnesses.  At best, the government's objections go to the weight of the proposed testimony rather than its admissibility.   The government's attempt to undercut defendant's constitutional right to present a defense, while at the same time actively seeking the death penalty against him, is simply unconscionable.

Based on the foregoing, this Court is respectfully requested to allow the defense to call these witnesses at the upcoming trial in this matter.  Should the government thereafter persist in its refusal based on executive authority, then dismissal of the notice of intent to seek the death penalty previously filed in this case is a viable option.

Respectfully submitted,

GEORGE M. LECCO

By:   _s/ Brian J. Kornbrath_
       Brian J. Kornbrath
       WV State Bar No. 7330
       Attorney for Defendant
       Federal Public Defender Office
       230 West Pike Street; Suite 360
       Clarksburg, West Virginia 26302
       Tel. (304) 622-3823
       Fax. (304) 622-4631
       E-Mail. Brian_Kornbrath@fd.org

Gerald T. Zerkin, Capital Resource Counsel

Amy L. Austin, Assistant Federal Public Defender
Federal Public Defender Office
701 East Broad Street; Suite 3600
Richmond, Virginia 23219
(804) 343-0800

Counsel for Defendant Lecco


**CERTIFICATION OF SERVICE**

I hereby certify that on February 12, 2010, I electronically filed the foregoing with the

Clerk of the Court for the United States District Court for the Southern District of West Virginia

using the CM/ECF system, which will send notification of such filing to the following:

Philip H. Wright, Assistant United States Attorney
R. Gregory McVey, Assistant United States Attorney
Office of the United States Attorney
P.O. Box 1713
Charleston, West Virginia 25326-1713
(304) 345-2200


By:     s/ Brian J. Kornbrath
Brian J. Kornbrath
WV State Bar No. 7330
Attorney for Defendant
Federal Public Defender Office
230 West Pike Street; Suite 360
Clarksburg, West Virginia 26302
Tel. (304) 622-3823
Fax. (304) 622-4631
E-Mail. Brian_Kornbrath@fd.org