```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                             CRIMINAL ACTION NO. 2:05-00107-01

**GEORGE LECCO**


### MEMORANDUM OPINION AND ORDER

Pending are defendant's (1) motion for an exception from an anticipated request for sequestration, filed December 14, 2009, (2) motion in limine concerning Patricia Burton, filed October 11, 2009, with counsel given leave to submit supplemental briefs until December 11, 2009, (3) motion in limine as to verbal exchanges, filed November 23, 2009, (4) motion in limine to bar the United States from presenting factually inconsistent theories, filed November 24, 2009, and (5) motion for <u>in camera</u> review of records relating to Valeri Friend, filed February 12, 2010.  Also pending is the United States' motion in limine to exclude any testimony by a subpoenaed Assistant United States Attorney and the Federal Public Defender, filed February 9, 2010.

The motion for an exception from an anticipated request for sequestration seeks permission for a defense investigator, Julianne Cuneo, to remain seated at the defense counsel table

throughout trial.  Counsel asserts that Ms. Cuneo's presence "is essential in order to assist counsel in the orderly presentation of a large number of witnesses and voluminous documentary evidence."  (Mot. at 2).  The United States does not oppose the motion.  Additionally, Ms. Cuneo agrees that she will not share witness testimony with any other person.  The court, accordingly, ORDERS that the motion for an exception from an anticipated request for sequestration be, and it hereby is, granted.

I.

A.   Motion in Limine Concerning Patricia Burton

The motion in limine concerning Patricia Burton has several components.  Regarding the request found therein that the United States be barred from eliciting testimony lacking a proper foundation, the parties are aware of their obligations under the Federal Rules of Evidence.  The remedy for a deviation therefrom is a timely objection and, if necessary, a motion to strike. Regarding the request that the United States advise Burton and Carmella Blankenship to limit their responses to questions asked of them, the United States has apparently done so with respect to Burton and will, presumably, do likewise with Ms. Blankenship.

2

Regarding the request that the United States tape record any further interviews with Burton, the request appears to intrude upon the work product privilege, defendant has offered no authority supporting the request, and the relief sought does not appear to be appropriate.

Regarding the final request found in the motion, namely, to bar Burton's testimony altogether, defendant has not made the showing necessary to justify an exclusion order.  See Fed. R. Crim. Proc. 601 and Advis. Comm. Notes; 3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 233 (2d ed. 2006); Steven Goode & Olin Guy Wellborn, Courtroom Handbook Fed. Evid. § 601 (2007); 148 A.L.R. 1140 (1944 and supp. 2007); United States v. Whittington, 26 F.3d 456, 466 (4th Cir. 1994); United States v. Lightly, 677 F.2d 1027, 1028 (4th Cir. 1982); Lockard v. Parker, 164 F.2d 804, 805 (4th Cir.  1947).  Based upon the foregoing, it is ORDERED that the motion in limine concerning Burton be, and it hereby is, denied.

B.   Motion in Limine As To Verbal Exchanges

Regarding the motion in limine as to verbal exchanges, defendant first asserts that the United States should be prohibited from introducing any evidence concerning the victim

3

praying during the killing, (2) her relationship to God or Jesus, or her children, and (3) any other "taunting or abusive comments." (Mot. at 1). The United States responds that it does not intend to introduce in its case in chief any such statements.[1] Defendant, however, further seeks to bar any evidence concerning certain statements made by Valeri Friend at her September 29, 2009, debriefing. At the debriefing, Friend noted that, during the murder, the victim inquired why she had been shot. Friend recounted that "Burton responded that Lecco wanted it [('the first statement')]." (Debrief. at 5). Friend then further told of the following additional exchange:

> Friend stated that Burton then asked Collins how law enforcement knew Lecco was still dealing cocaine and had firearms. Friend said that Burton told Collins that they were the only two who knew that information and she (Burton) had not told on Lecco, therefore Collins must have.

(Id. ("the second statement")).

Federal Rule of Evidence 801(d)(2)(E), provides that a statement does not constitute hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy . . . ." F.R.E. 801(d)(2)(E). In United States v. Smith, 441 F.3d 254 (4th Cir. 2006), the court of appeals

---

[1] If the United States proposes to use any of the statements for impeachment purposes, it should first approach the bench.

4

observed as follows:

> "To admit testimony under this rule, a court must conclude (1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy."

Id. at 261 (quoting United States v. Neal, 78 F.3d 901, 905 (4th Cir. 1996) (internal quotation marks omitted)).  The decision in Smith offers further guidance in determining if a statement was made in furtherance of the conspiracy:

> "A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." U.S. v. Shores, 33 F.3d 438, 443 (4th Cir.1994). For example, statements made by a conspirator to a non-member of the conspiracy are considered to be "in furtherance" of the conspiracy "if they are designed to induce that party either to join the conspiracy or to act in a way that will assist it in accomplishing its objectives." Id. at 444. Most courts, including the Fourth Circuit, "construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception." Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence vol. 5, §§ 801.34[5], 801-89 (Joseph M. McLaughlin ed., 2d ed., Matthew Bender 2005).

Id. at 262.

Defendant asserts that neither the first nor second statements were made in furtherance of the conspiracy.  Regarding the first statement, he asserts the lack of furtherance is illustrated by the fact that, at the time the statement was made,

5

"Collins had already been shot and the murder was well underway. At that point, it <u>promoted</u> the objects of the conspiracy <u>not at all</u> for Collins to be told why this was happening."[2]  (Mot. at 8).  Regarding the second statement, defendant asserts that instead of it being said in furtherance of the conspiracy, "it simply advanced some personal agenda of Burton or Friend, depending on who actually said it, to rub Collins' face in the allegation that Lecco was behind it."  (<u>Id.</u>)

The United States responds that "informing Collins why and on whose order she was to be murdered, while the murderers were in the throes of the act, was part of the retaliation, effectively rubbing psychological salt into the already inflicted physical wounds."  (Resp. at 6).  The United States additionally

---

[2]**Defendant additionally asserts as follows:**

**Moreover, the result would be no different if the government were to offer Burton's testimony that Friend told Collins, when she shot her, that "Porgy sent me to do this." (Attachment 5, TR 19). Thus, regardless of whether Lecco's alleged statement to Burton that he "wanted it," would be admissible if Burton or Friend were to testify to the statement being made in another context, it is not admissible coming from Friend or Burton in the context of the verbal exchanges at the trailer at Double Camp.**

(Mot. at 8). The referenced attachment is a transcribed statement from Burton attesting to a statement from Friend to Collins that "Porgy sent me to do this." It is unclear if the United States intends to offer the statement by Friend attributed to her by Burton.

6

notes that the victim was still alive when the statements were uttered and that the first and second statements furthered the conspiracy by making Collins suffer as a result of her law enforcement cooperation.

In Smith, the court of appeals observed that the in furtherance requirement is construed so broadly that even a casual relationship of the statement to the conspiracy will result in a finding of admissibility.  The decision in Smith further noted that the statement need only be intended to promote conspiracy objectives, whether it did or did not actually do so.  The defendant's arguments against admissibility draw the exception too narrowly.

In addition to the United States' well-taken contentions advocating admissibility, the two statements uttered by Burton had an additional effect.  They conveyed to Friend, a fellow conspirator, the penalty for doing anything that might hinder advancement of the conspiracy's objectives.[3]  The court,

---

[3]The timing consideration identified by defendant is of little moment.  See United States v. Howard, 115 F.3d 1151, (4th Cir. 1997) (noting the discussions of two jailed co-conspirators about a conspiracy operating beyond the prison walls was admissible despite the fact the individuals were in custody given that the discussions "plainly dealt with what was currently transpiring in the conspiracy.").

accordingly, ORDERS that the motion in limine as to verbal exchanges be, and it hereby is, denied.[4]

C.  Motion in Limine to Bar the United States from Presenting Factually Inconsistent Theories

Defendant notes the many, somewhat varying accounts that have been given by Burton, Friend, and Blankenship concerning the details surrounding the victim's murder.  Some of these varying accounts are as follows:

---

[4]Defendant also appears to object based upon Rules 401 and 403.  As noted by the United States, the first and second statements directly support the witness tampering and retaliation counts in the Fourth Superseding Indictment inasmuch as they tend to prove the identity of the assailant and the motive for the murder.  The statements also tend to support, circumstantially at least, the cocaine conspiracy charge, the substantive cocaine charges, and the firearm charges found in the Fourth Superseding Indictment.  The probative value of the statements in relation to these charges is also not substantially outweighed by any prejudicial effect.

The court also declines defendant's request to schedule an evidentiary hearing to ascertain the exact testimony that either Friend or Burton might offer in this area:

> Appellants, relying on the Fifth Circuit decision in United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), argue that it was error for the trial court here not to hold a hearing to determine the existence of the conspiracy before any of the co-conspirator statements were admitted in the case-in-chief. This court, however, does not require the James hearing.

United States v. Hines, 717 F.2d 1481, 1488 (4th Cir. 1983).

- **June 27, 2005: Burton notified the Federal Bureau of Investigation that Friend murdered the victim;**

- **June 28, 2005: Burton told other law enforcement agents that she had witnessed Friend shoot the victim and strike her with a rock.**

- **July 7, 2005: Burton's attorney proffered to law enforcement Burton's statement that defendant had killed the victim with Burton, Friend, and Blankenship present.**

- **July 12, 2005: Blankenship testified before a federal grand jury that Lecco was not present at the murder scene.**

- **Burton's grand jury testimony, on a date unknown, stated that Friend committed the murder but that Lecco was present.**

- **Burton's grand jury testimony reflects as well that she told Blankenship that she (Burton) struck the victim's face with a rock.**

**Defendant observes correctly that "the government's fundamental interest in criminal prosecution [is] 'not that it shall win a case, but that justice shall be done.'" Smith v. Groose, 205 F.3d 1045, 1049 (8th Cir. 2000). From that premise, he asserts that reliance upon more than one of the aforementioned factual accounts amounts to the knowing use of false testimony in violation of the Due Process Clause.**

**The cases cited by defendant all involve a different scenario, namely, the use of contradictory theories of guilt in two separate trials to convict two separate defendants of the**

9

same offense. See, e.g., Smith, 205 F.3d at 1049 (finding due process violation in convicting defendant with one of a codefendant's two factually contradictory versions of events surrounding murders then relying upon the other version at a later trial to convict someone else of same murders).

As noted by the United States, the circumstances in this action involve a single defendant against whom multiple witnesses will testify in a single trial with somewhat varying accounts. Controlling precedent discloses no due process violation. See, e.g., United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987) ("Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."); United States v. Orrego-Martinez, 575 F.3d 1, 9 (1st Cir. 2009) ("Simply because there exist[ ] inconsistencies between [a witness's] grand jury and trial testimony does not warrant the inference that the government knowingly introduced perjurious testimony.")(internal quotation marks and citations omitted).

The court, accordingly, ORDERS that the motion in limine to bar the United States from offering what amounts to the testimony of witnesses who give varying accounts of a given event be, and it hereby is, denied.

D.  Motion for <u>In Camera</u> Review of Records Relating to Valeri Friend

On January 26, 2010, the United States informed defendant that it possessed copies of various records previously provided to it by Friend during the penalty phase of the May 2007 trial. The records putatively deal with various aspects of Friend's history and include medical, psychiatric, and substance abuse records. The United States indicated its belief that it was required to turn over at least some of these records in satisfaction of its discovery obligations and to make the remainder of the documents available for review by defendant.

On February 8, 2010, counsel for Friend objected to the proposed disclosure in a brief letter, without citation to any authority, addressed to counsel for the United States and copied to the court and defense counsel. In the instant motion, defendant asserts as follows:

> If defendant makes a colorable claim that requested information is exculpatory, but the Court is unable to ascertain the character of the evidence, the Court may conduct an <u>in camera</u> review of the evidence to determine whether it is exculpatory and should be disclosed. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).
>
> The privacy rights of Ms. Friend, as they pertain to the records at issue, have already been substantially compromised by previous disclosure to the

> government. An in camera review by the Court will confirm the government's reasonable belief that these records of Ms. Friend are exculpatory to the defendant and should be disclosed. As a result, the defendant's constitutional right to present a defense should trump the limited privacy rights Ms. Friend presently holds.
>
> The government, represented by Assistant United States Attorneys R. Gregory McVey, does not oppose the instant motion.
>
> WHEREFORE, based on the foregoing, the Court is respectfully requested to conduct an in camera review of various records pertaining to . . . Friend that are currently in the custody and control of the government. Should the Court determine that these records are, in fact, exculpatory, then further disclosure to the defendant is appropriate.

(Mot. at 2).

It appears an in camera review is unnecessary at this time. During the February 19, 2010, pretrial motions hearing, the court directed the United States to turn over to defendant the Brady and Giglio material in its possession. It was further suggested that counsel meet and confer concerning the documents remaining in issue. Counsel are expected to do so no later than March 29, 2010, in an effort to narrow or resolve any remaining disputes and present to the court, if they wish, a proposed protective order pursuant to Federal Rule of Criminal Procedure 16(d)(1) that might obviate some or all of the privacy issues presented. The admissibility of any disclosed documents or

information will be addressed at the time, if ever, that the materials are offered at trial.

The court, accordingly, ORDERS that the motion for <u>in camera</u> review of records relating to Friend be, and it hereby is, denied without prejudice.

E.  United States' Motion in Limine to Exclude Any Testimony by a Subpoenaed Assistant United States Attorney and the Federal Public Defender

The United States moves to exclude any testimony by Assistant United States Attorney John Frail and Federal Public Defender Mary Lou Newberger, both of whom have been subpoenaed by defendant. The United States asserts that the testimony is irrelevant. Some factual background is necessary.

On January 19, 2005, Assistant United States Attorney John Frail opened an investigation of defendant based upon the suspicion that he was engaged in the illegal sale of cocaine. AUSA Frail remained responsible for the matter until March 17, 2005. On February 16, 2005, following a search of defendant's Pizza Plus restaurant, he agreed to cooperate with law enforcement in the investigation of other matters. On March 14, 2005, Carla Collins, at the request of and on behalf of

13

defendant, signed a confidential informant agreement to likewise assist in other investigations.  On March 17, 2005, the matter was transferred to AUSA Karen Schommer[5], who was responsible for the case until July 18, 2005.

During defendant's first trial, Task Force Agent Andy Perdue testified that he and other agents learned that defendant was still dealing in cocaine following the execution of the search warrant at the Pizza Plus on February 16, 2005.  Agent Perdue testified that, after confronting defendant with this information in late March or early April of 2005, defendant insisted that he be allowed to sell cocaine to maintain his credibility in the drug community. After expressing his further desire, according to Agent Perdue, that he also be permitted to carry a firearm, Agent Perdue advised that he could no longer work with him.  Agent Perdue also stated that he would contact the United States Attorney's Office, in particular AUSA Frail, apparently to disclose his decision to no longer use defendant in an investigatory fashion.  Agent Perdue did not document the conversation with defendant, nor did he document the call that he putatively made to AUSA Frail.

---

[5]While AUSA Schommer is not named in the motion, the United States advised at the February 19, 2010, hearing that it is seeking an order to bar her testimony as well.

Defendant now seeks to call AUSA Frail to testify essentially as follows:

> That he has no recollection of any communication from law enforcement regarding defendant's status as an informant.
>
> That he would not generally receive updates from law enforcement regarding an informant's ongoing cooperation.
>
> That, if there were problems associated with an informant, he would likely receive a law enforcement contact and pass that information along to the informant's attorney.
>
> If an informant's cooperation was terminated, AUSA Frail would then pursue a plea.

It appears that defendant seeks to call AUSA Schommer as well, who may testify similarly, although the United States appears to contend otherwise.[6]  Defendant further proposes to call his former counsel, Ms. Newberger, to testify that she never received any contact from AUSA Frail or any other federal prosecutor that defendant's informant status had been terminated.

Defendant offers a lengthy recitation concerning why the aforementioned testimony is relevant.  First, defendant asserts that he and Ms. Collins worked closely together and

---

[6] At the February 19, 2010, pretrial motions hearing, the United States suggested that AUSA Schommer would testify that she does not recall the specific method of contact, but does remember being contacted by law enforcement and told that defendant was engaging in the sale of controlled substances and would not be used as an informant any longer.

shared common goals inconsistent with the view that he wished to procure her murder. He asserts the only testimony supporting a claim that defendant was terminated as an informant, based upon Ms. Collins' statement to Agent Perdue that defendant was still dealing in cocaine, is from Agent Perdue. Defendant notes, however, that (1) there is no documentary evidence from law enforcement noting defendant's termination as an informant, despite well documented and meticulous records of other matters relating to the investigation, (2) AUSAs Frail and Schommer would testify that they do not recall being informed that defendant was being terminated as an informant, (3) Ms. Newberger will testify that she was never contacted by the United States and advised that defendant was being terminated as an informant, and (4) if defendant was terminated as an informant in late March or early April 2005, one would not expect his arrest to have been delayed, as it was, until May 3, 2005.[7]

The United States asserts that AUSA Frail's recollection is irrelevant inasmuch as he no longer was responsible for the matter at the time in March or April 2005 that Agent Perdue might have contacted him. This does not account for the possibility that Agent Perdue did not know of the

---

[7] Defendant asserts that the arrest was prompted by a complaint from Michael Looney on May 2, 2005, that defendant had threatened him for serving as an informant.

reassignment of the case to AUSA Schommer. In any event, the United States' contention, and the balance of its assertions, are more appropriate for cross examination rather than outright exclusion of the challenged testimony.

Based upon the foregoing discussion, the proposed testimony of AUSAs Frail and Schommer and FPD Newberger tend to make the existence of defendant's defense concerning Agent Perdue more probable than it would be without the evidence. F.R.E. 401; United States v. Basham, 561 F.3d 302, 332 (4th Cir. 2009) ("[R]elevance typically presents a low barrier to admissibility." Thus, evidence is relevant if it is "worth consideration by the jury" or has a "plus value.") (quoting United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003) (other citations and internal quotation marks omitted)). Neither does the proposed testimony appear to offend Rule 403. The court, accordingly, ORDERS that the United States' motion in limine to exclude any testimony by a subpoenaed Assistant United States Attorney and the Federal Public Defender be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED: March 22, 2010

_____
John T. Copenhaver, Jr.
United States District Judge