```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              CRIMINAL ACTION NO. 2:05-00107-01

**GEORGE LECCO**


## MEMORANDUM OPINION AND ORDER

Pending are defendant's motion for production of Patricia Burton's presentence report, filed April 2, 2010, and the United States' motion in limine regarding exclusion of expert testimony, filed March 25, 2010.

On December 12, 2006, the court directed that portions of Ms. Burton's presentence report, namely, paragraphs 6 through 32, 55 and 56, and 63 through 65, be provided to defendant by the United States Probation Office, with certain conditions attached. Counsel for defendant advised in open court on April 5, 2010, that this prior disclosure was satisfactory.  The court, accordingly, ORDERS that the motion for production of Ms. Burton's presentence report be, and it hereby is, denied as moot. It is expected that counsel will comply with the conditions attached to the disclosure by the December 12, 2006, order.

I.

Regarding the motion in limine, the United States seeks to exclude the testimony of defendant's proposed expert witnesses Larry B. Smith and Kenneth Mikionis.  Smith and Mikionis are former Federal Bureau of Investigation ("FBI") special agents whom defendant plans to offer as experts on internal FBI guidelines.

In a January 29, 2007, memorandum opinion and order ("2007 decision"), the court addressed a defense motion in limine seeking to preclude any reference to the victim in this case as a confidential informant, federal cooperating source, cooperating witness, or any other reference to her acting under federal authority.  The defense contended, <u>inter</u> <u>alia</u>, that certain actions by law enforcement in handling the victim during her work as an informant were insufficient to confer "federal status" upon her according to the FBI Manual of Investigative Operations and Guidelines ("MIOG") and the Attorney General's Guidelines Regarding the Use of Confidential Informants ("Guidelines").

The United States responded, in part, that (1) the Guidelines expressly preclude third parties from relying upon them as creating any independent rights; (2) it was not mandatory

to apply the Guidelines to the victim; (3) compliance with the Guidelines is irrelevant; (4) binding precedent provides, as a general matter, that internal, Department of Justice protocols, like the MIOG and the Guidelines, vest no rights in those accused of criminal misconduct.

After noting the decision in United States v. Caceres, 440 U.S. 741, 755-56 (1979), the 2007 decision observed as follows:

> The observation in Caceres has led either directly or indirectly to the suggestion by numerous courts of appeal, including our own, that internal agency guidelines offer no assistance to an accused complaining of their violation in the investigation or prosecution of his or her case. See, e.g., [United States v.] Jackson, 327 F.3d [273,] . . . 295 (4th Cir. 2003) ("That the Department of Justice has developed an internal protocol for exercising discretion and channeling prosecutorial resources does not provide license for courts to police compliance with that protocol, and it is well established that the Petite policy and other internal prosecutorial protocols do not vest defendants with any personal rights.")

(Memo. Op. at 7).

The court observed as well the views of certain commentators on the point:

> "Prosecutors . . . do not always adhere to these guidelines. The accused has no judicial recourse when prosecutors fail to abide by these guidelines, as courts routinely find these guidelines strictly internal and unenforceable at law. Thus, when it comes to DOJ guidelines, a failure to follow office procedure is an error that cannot be used by the accused who

3

might suffer as a result of this violation."
(Id. at 7-8) (quoting Ellen S. Podgor, Department of Justice Guidelines: Balancing "Discretionary Justice", 13 Cornell J. L. & Pub. Pol'y 167, 169 (2004) (emphasis supplied); see also 1 Wayne R. LaFave et al., Criminal Procedure § 1.6 (2d ed. 2006) ("In general . . . the message to the federal courts [after Caceres] is that the basic judicial remedy, upon learning of a deviation from the agency's regulations, is to call it to the attention of that unit of the agency responsible for applying internal discipline."). In view of this "rather one-sided state of the law," the court, in the 2007 decision, denied defendants' motion in limine. (Id. at 8).

In its motion in limine presently under consideration, the United States relies upon the 2007 decision and further asserts the proposed expert evidence is irrelevant under Rules 402 and 702 inasmuch as overwhelming authority establishes that internal agency guidelines do not redound to an accused's benefit. The United States additionally asserts that the Huntington Violent Crimes/Drug Task Force (the "Task Force") was not subject to the FBI guidelines upon which defendant seeks to offer expert testimony[1], and, assuming the Task Force was subject

---

[1]The United States asserts in particular on this point as follows:

(continued...)

4

to FBI guidelines, their violation would be irrelevant to any element of the charged offenses and would not establish a defense. Moreover, the United States asserts, the proposed expert evidence transgresses Rule 403.

In response, defendant attempts to distinguish the expert evidence now proffered from the situation presented in 2007:

> [Defendant] . . . does not seek to introduce such testimony to shield him from prosecution or to bar the government from asserting that Ms. Collins was an informant, confidential or otherwise, or that she was a potential government witness. Rather, he seeks to

---

[1](...continued)
Undersigned counsel has conferred with FBI Special Agents Joseph Ciccarelli and Matthew Hoke, who at the relevant time were, respectively, the Supervisory Senior Resident Agent for the Southern District of West Virginia and the Special Agent Coordinator of the Task Force, regarding the protocols that the Task Force used. Both Special Agent Ciccarelli and Special Agent Hoke state that the Task Force did not use the FBI's guidelines for handling informants. Although the FBI coordinated the Task Force, and although the local officers serving on it were deputized as Special Federal Officers, the Task Force was not an FBI sub-unit.

(Govt. Mot. at 5). The United States concedes that a Memorandum of Understanding ("MOU") for the Task Force stated that FBI guidelines would apply to informant handling but "the FBI officials directing the Task Force overrode that provision . . . . [and ] used an informally developed set of in-house procedures . . . ." (Id. at 6) ("They were not given the FBI's informant guidelines, they received no instruction on them, and they were authorized to employ procedures that did not conform to them.").

> introduce this evidence to demonstrate the sloppiness of the investigation in this case, and its bad faith in pursuing Mr. Lecco, all of which is plainly admissible under <u>Kyles v. Whitley</u>, 115 S. Ct. 1555 (1995). Also, the testimony could provide the basis for a defense argument that the Task Force had decided, prior to the murder of Carla Collins, that she had been discarded as an informant and could not serve as a witness.

(Resp. at 2); <u>id.</u> at 3 ("Her standing as an informant and her reliability as such, and the Task Force's treatment of her may well suggest that she had been too compromised to serve as a witness for the government"). Defendant additionally asserts that the MOU signed by each Task Force agent reflected their agreement to abide by FBI protocols, with any modifications required in writing.[2] Defendant further counters that the proffered expert evidence does not contravene Rule 403.

---

[2]On this point, defendant asserts, in part, as follows concerning relevance:

> [I]f the Guidelines said that an agent must memorialize every contact with an informant, but the Task Force decided not to do so as part of this investigation, that would provide relevant information for the jury to consider in determining the credibility of the . . . [Task Force] agents, and the reasonableness of the actions they took.

(Resp. at 2). He notes as well that the United States has not identified any authority for the Task Force to unilaterally cease using the Guidelines or, presumably, related directions. Regarding the United States contention that the agents did just that, defendant asserts this shows "that the investigation was marred by recklessness and/or dishonesty." (Resp. at 3).

As noted, the proposed expert evidence is apparently designed (1) to demonstrate the sloppiness of the investigation and its bad faith in pursuing Mr. Lecco, and (2) to facilitate a defense argument that the Task Force had decided, prior to the victim's murder, to discard her as an informant and not use her as a witness. Regarding the first contention, it is unclear what specific portion of Kyles is relied upon by defendant in support. It would appear, however, that he grounds the argument in the following observation from the majority opinion:

> [T]he defense could have examined the police to good effect on their knowledge of Beanie's statements and so have attacked the reliability of the investigation in failing even to consider Beanie's possible guilt and in tolerating (if not countenancing) serious possibilities that incriminating evidence had been planted. See, e.g., Bowen v. Maynard, 799 F.2d 593, 613 (CA10 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible Brady violation"); Lindsey v. King, 769 F.2d 1034, 1042 (CA5 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld Brady evidence "carried within it the potential ... for the ... discrediting ... of the police methods employed in assembling the case").
>
> The dissent . . . suggests that for jurors to count the sloppiness of the investigation against the probative force of the State's evidence would have been irrational, but of course it would have been no such thing. <u>When, for example, the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it</u>.

Kyles, 514 U.S. at 446 and n. 15 (emphasis added).

7

It may be the case that defendant might, through other means and sources, develop a defense along the lines sanctioned by <u>Kyles</u>.  It is clear, however, as it was in 2007, that the Guidelines, the MOU, and similar materials may not be used for that or any related purpose.  As noted by our court of appeals in <u>Jackson</u>, the law "does not provide license for courts to police compliance with" internal agency protocols.  Defendant's approach would essentially shift this prohibited policing function from the court to the jury.  Doing so works the same harm identified by <u>Caceres</u>.  <u>Id.</u> at 755 ("In the long run, it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration of the kind displayed by this record, than either to have no rules except those mandated by statute, or to have them framed in a mere precatory form.").

In sum, neither of defendant's arguments are sufficient to displace the rule, previously discussed in the 2007 decision, that a third party may not exploit an agency's internal guidelines for his own legal advantage.  The court, accordingly, ORDERS that the  motion in limine regarding exclusion of expert testimony be, and it hereby is, granted.[3]

---

[3]In view of this disposition, the court need not address the United States' remaining contentions concerning the infirmities in the proposed expert evidence.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED: April 14, 2010

John T. Copenhaver, Jr.
United States District Judge