UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON


UNITED STATES OF AMERICA


v.                              CRIMINAL NO. 2:05-00107


GEORGE M. LECCO
     also known as "Porgy"


GOVERNMENT'S PENALTY PHASE MEMORANDUM OF LAW ON
"EXECUTION IMPACT" EVIDENCE; PRISON RESTRICTIONS AND
PRISON LIFE EVIDENCE; AND RESIDUAL DOUBT MITIGATING FACTOR

The United States of America, by and through its undersigned Assistant United States Attorneys, hereby files this penalty phase memorandum of law relating to three issues: evidence relating to the impact of a verdict of death on defendants' families (sometimes referred to as execution impact evidence); evidence relating to the ability of prisons to minimize inmate dangerousness, and prison life in general; and on the defendant's request to instruct the jury that residual doubt is a mitigating factor.

I.   **The Court Should Exclude Evidence of Impact of a Death Sentence, and Defense Witness Pleas for Mercy, During Penalty Phase**

The FDPA incorporates prior federal case law defining mitigating factors as "factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8).  Testimony that a verdict of death would have a

negative impact on the defendant's family, and the family members' personal views about the death penalty, are irrelevant and are not proper mitigation as enumerated in § 3592(a)(8). <u>United States v. Bolden</u>, 545 F. 3d 609 (8th Cir. 2008)(court's refusal to submit execution impact as a mitigating factor was not error where witnesses had been permitted to testify about the defendant's positive impact on their lives as well as their love for the defendant); <u>United States v. Mitchell</u>, 502 F. 3d 931 (9th Cir. 2007)(witnesses not allowed to offer opinions on what the jury's verdict should be); <u>See also Jackson v. Dretke</u>, 450 F. 3d 614 (5th Cir. 2006)(execution impact evidence does not reflect a defendant's background, character or record); <u>Coleman v. Saffel</u>, 869 F.2d 1377, 1393 (10th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1090 (1990); <u>Robison v. Maryland</u>, 829 F.2d 1501, 1504 (10th Cir. 1987), overruled on other grounds, <u>Romano v. Gibson</u>, 239 F.3d 1156, 1169 (10th Cir. 2001); <u>see also Reese v. Delo</u>, 94 F.3d 1177, 1183 (8th Cir. 1996) (citing <u>Robison</u>, 829 F.2d at 1505). In <u>Robison</u>, the court held that the testimony of a relative of the victim urging the jury to reject the death penalty was not relevant mitigating evidence. <u>Robison</u>, 829 F.2d at 1504.

Lastly, two district courts in FDPA cases rejected pleas for mercy from defense witnesses (sometimes known as execution impact evidence): <u>United States v. Taylor</u>, 583 F. Supp. 2d 923, 944 (E.D. Tenn. 2008)(Court addressed this issue at length, concluding for a

variety of reasons that such evidence should be excluded); and United States v. Caro, 461 F. Supp. 2d 459, 465 (W.D. Va. 2006).

For these reasons, any evidence or argument that a verdict of death would have a negative impact on the defendant's relatives, and their own personal views about the death penalty, are irrelevant and should be excluded from evidence.

## II. The Court Should Exclude Evidence of The Ability or Capacity of the Bureau of Prisons To Safely House Defendant

The United States is aware that the defendant has hired Dr. Mark Cunningham as an expert witness for the penalty phase of the trial. Dr. Cunningham frequently testifies in capital cases, and one topic he has been known to address is the ability of the Federal Bureau of Prisons (BOP) to restrain inmates from violence. Any such testimony about BOP regulations, guidelines, policies and practices, along with testimony about BOP facilities and their design and use for restricting violent inmates, should be excluded as irrelevant. Such testimony is unrelated to this defendant's character, record or background, or to the circumstances of his offense and thus does not constitute mitigating evidence. Rather, it is evidence directed against the propriety of the death penalty itself – an argument that the death penalty is not needed to prevent future violence, because the prison system is capable of such prevention.

In <u>United States v. Johnson</u>, 223 F. 3d 665, 674-75 (7th Cir. 2000), the government had alleged and offered evidence of future dangerousness, and the defense called a psychologist to testify about prison controls, restrictions, and BOP polices and procedures; and to opine that the defendant would not pose a threat in jail.

The Court held that "...while defendant was of course entitled to counter the government's evidence that he would be a continued menace to society while in prison, that being evidence offered to establish an aggravating factor...he should not have been permitted to present to the jury, as he was, evidence of the existence of maximum-security federal prisons decked out with control units, in order to establish a mitigating factor." The Court went on to say that "[a] mitigating factor is a factor arguing against sentencing this defendant to death; it is not an argument against the death penalty in general." (citing <u>Penry v. Lynaugh</u>, 492 U.S. 302; <u>Eddings v. Oklahoma</u>, 455 U.S. 104; and <u>Locket v. Ohio</u>, 438 U.S. 104). The <u>Johnson</u> Court further noted that "...the list of mitigating factors in the federal death penalty statute does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant." Finally, the Court recognized that a mitigation argument that prisons are capable of controlling the most dangerous inmates is illogical, as it amounts to an argument that, because

*this* defendant proves to be so dangerous while confined that extra prison restrictions must be imposed against him, the existence of those restrictive measures mitigates against imposing the death penalty.  Of course, the corollary to that argument is that less dangerous defendants should not receive the death penalty either.

In <u>U. S. v. Taylor</u>, 583 F. Supp. 2d 923, 936-42 (E.D. Tenn. 2008), a case involving Dr. Cunningham, the government actually presented evidence of future dangerousness in the form of an attempted escape, a letter containing a threat to a witness, and the defendant's ability to send letters from prison in a third party's name.  The Court, reflecting the well-established Supreme Court definition of relevant mitigation, noted that "[a] relevant mitigating factor is one concerning 'any aspect of a defendant's character or record and any of the circumstances of the offense." <u>Id.</u>, citing <u>Franklin v. Lynaugh</u>, 487 U.S. 164.  The Court went on to hold that "[g]eneral prison security is not a proper mitigating factor because it is unrelated to the defendant's background, record or character, or any other circumstance of the offense, or any other mitigating factor required by the Constitution and the FDPA." <u>Id.</u>  With respect to Dr. Cunningham specifically, the Court said, "[t]he major problem with Dr. Cunningham's disallowed testimony is its irrelevance to the issues in this case.  The essence of his testimony is that individuals imprisoned in federal prisons are not likely to commit crimes.  This is indisputably true

but it has nothing to do with this case." Id. "Permitting his generalized testimony about prison crime would simply confuse and mislead the jury and invite a decision on an impermissible basis." Id. "Dr. Cunningham's testimony had nothing to do with the personal characteristics or record of defendant but rather was about an extraneous body, i.e., the Federal Bureau of Prisons." Additionally, the Court found problematic the fact Dr. Cunningham's testimony amounts to instructing the jury on the law regarding BOP policies, regulations and procedures; which are matters properly within the province of the Court and that witnesses are not allowed to discuss in trials. Id.

In U.S. v. Edelin, 180 F. Supp. 2d 73, 75-78 (D. D.C. 2001), a case where the Government withdrew the future dangerousness factor and moved in limine for an order to preclude the testimony of, again, Dr. Cunningham, the Court granted the Government's motion, holding that "[t]he proffered testimony of Mr. Cunningham...has no relation to the specific charges against [the defendant], his character, or any other proper mitigating factor, would provide no basis of the jury to impose a sentence less than death, and is therefore inadmissible as mitigation evidence."

In U.S. v. Wilson, 493 F. Supp. 2d 491, 508 (E.D. N.Y. 2007), the Government offered evidence of future dangerousness but still moved to exclude Dr. Cunningham's testimony, as well as testimony from a prison expert. The Court permitted limited testimony, but

first recognized the "well-reasoned cases cited by the government" (those cited above, minus <u>Taylor</u>) establishing that such evidence does not establish a mitigating factor.  The Court distinguished those cases on the grounds that the Government in <u>Wilson</u> was, in fact, pursuing a future dangerousness aggravating factor.  But, even then, the Court barred testimony about any specific institution in which the defendant was unlikely to be housed, such as ADX-Florence; and the defense was required to establish Dr. Cunningham's expertise with respect to a particular facility in which defendant was likely to be housed before he would be permitted to testify about any specific facility.

In an unreported Fourth Circuit state <u>habeas</u> case, <u>Schmitt v. Kelly</u>, 189 Fed. Appx. 257, 263-66 (4th Cir. 2006), the government had introduced evidence of future dangerousness and the defendant wanted to call a witness from the Dept. of Corrections to describe security features at maximum security prisons and prison life in such prisons.  The Fourth Circuit stated, "[t]o the extent Schmitt contends that general evidence of prison life and prison security features constitute relevant mitigating evidence under the Eighth Amendment and Fourteenth Amendment, his claim is without merit." <u>Id.</u>, at footnote 5.   "[T]he Supreme Court has repeatedly noted that mitigating evidence should relate to the individual defendant and why that defendant should or should not be sentenced to death." <u>Id</u>.  The defendant had argued that he was entitled to present such

evidence to rebut the government's suggestion that the "system" could not be trusted to handle the defendant appropriately.  The Court rejected that argument, holding that the government did not present evidence concerning prison security or the nature of prison confinement, and therefore the defendant was not entitled to present evidence in rebuttal.

### III. The Court Should Not Instruct the Jury that Residual Doubt is a Mitigating Factor

#### A.  Introduction

In recent years, several capital defendants have attempted to assert during the penalty phase that residual doubt is a valid mitigating factor.  As is explained *infra*, residual doubt is not a valid mitigator.  It is not constitutionally required nor permitted by statute, it is contrary to the Supreme Court's death penalty jurisprudence, and it creates an impossible burden of proof in capital cases.  The Government requests this Court to preclude residual doubt as a mitigator in this case.

#### B.  Argument

##### 1.  The Reasoning of <u>United States v Davis</u>, 132 F. Supp.2d 455 (E.D. La. 2001) Should Be Rejected

The first FDPA case supporting the use of residual doubt as a mitigator was <u>United States v. Davis</u>, 132 F. Supp.2d 455 (E.D. LA. 2001).  Thereafter, a few other district courts followed <u>Davis</u> and in each the reasoning of <u>Davis</u> was adopted with little or no additional analysis.  <u>See, e.g.</u>, <u>United States v. Foster</u>, 2004 WL

8

868649 (D.Md. 2004); United States v. Bodkins, 2005 WL 1118158 (W.D. Va. 2005); United States v. Honken, 378 F. Supp.2d 1040 (N.D. Ia. 2004)(the Court adopted the rationale of Davis without analysis, but strongly urged the Government to appeal and found that "the issue is a material and controlling question of law as to which there is substantial ground for difference of opinion [and] that the issue is one on which the law is unsettled . . . ." Id. at 1041.)

More recently, however, the reasoning of Davis was explicitly rejected in United States v. Caro, 483 F. Supp. 2d 513 (W.D. Va. 2007); and two Circuit Courts of Appeal have indicated that residual doubt is not a legitimate mitigating factor in FDPA cases: United States v. Jackson, 549 F. 3d 963, 981 (5th Cir. 2008)(finding no Eighth Amendment violation in refusing to instruct the jury on residual doubt), and United States v. Corley, 519 F. 3d 716, 729 (7th Cir. 2008)(Court ultimately decided it did not have to reach the issue, but clearly indicated that residual doubt is not a legitimate mitigating factor). Two other courts, in unpublished opinions, also rejected residual doubt as a mitigating factor in FDPA cases. See United States v. Eye, 2008 WL 2121011 (W.D. Mo. 2008); and United States v. Lecco, 2007 WL 4224724 (S.D. W. Va. 2007).

The Government urges the Court to follow the well-reasoned analysis in Caro and the strong persuasive authority presented in

<u>Jackson</u> and <u>Corley</u>, and reject a jury instruction on residual doubt.  In addition to the FDPA case law directly on point, the Government requests this Court to consider the following analysis of the issues underlying residual doubt.

### 2. Residual or lingering doubt is not a constitutionally required mitigating circumstance

The Eighth Amendment to the Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." <u>U.S. Const. Amend. VIII</u>.  It does not constitute cruel and unusual punishment to preclude a defendant – whom the jury has found guilty beyond a reasonable doubt – from arguing at the sentencing phase that the jury should not sentence him to death because of "residual doubt" about his guilt.  At the sentencing phase of a capital proceeding, "the jury is no longer deciding between guilt and innocence," but is instead "deciding between life and death." <u>Deck v. Missouri, 125 S. Ct. 2007, 2014 (2005)</u>.  There is no valid constitutional justification for blurring those inquiries and mandating that a jury reconsider a defendant's guilt at the sentencing phase.  Nor is there a valid justification for interpreting the Constitution to mandate that the jury be allowed to deviate, at its discretion, from the traditional "reasonable doubt" standard, which appears to have been developed precisely for the purpose of protecting defendants in capital proceedings.

10

In <u>Franklin v. Lynaugh</u>, 487 U.S. 164 (1988), a plurality of the Supreme Court held that the Eighth Amendment did not require a residual doubt mitigating instruction in a capital case. The opinion by Justice White, joined in by three other justices, characterized the claim that a capital defendant had a constitutional right to seek jury consideration of residual doubts about guilt as a "questionable proposition." <u>Id.</u> at 174. The defendant in <u>Franklin</u> also claimed that he had been deprived of the right to have the jury consider his relative culpability for the victim's death and the extent to which he intended the victim's death, but Justice White's opinion found that the defendant had not been so deprived.

Justice O'Connor's concurring opinion, joined by Justice Blackmun, reviewed the Court's prior decisions mandating jury consideration of mitigating circumstances and concluded as follows:

> Our decisions . . . provide no support for petitioner's claim because "residual doubt" about guilt is <u>not a mitigating circumstance</u>. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death. . . . "Residual doubt" is not a fact about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty." Petitioner's "residual doubt" claim is that the States must permit capital sentencing bodies to demand proof of guilt to "an absolute certainty" before imposing the death sentence. <u>Nothing in our cases mandates the imposition of this heightened burden of proof at capital sentencing</u>.

<u>Id.</u> at 188 (emphasis added).

Although the Court did not squarely hold in <u>Franklin</u> that "residual doubt" was not a constitutionally mandated sentencing factor, the Supreme Court noted the following Term that "a majority [in <u>Franklin</u>] agreed" that consideration of "residual doubt" was not constitutionally required. <u>Penry v. Lynaugh</u>, 492 U.S. 302, 320 (1989). Lower courts have repeatedly read <u>Franklin</u> at least as broadly. <u>See, e.g.</u>, <u>State v. Hartman</u>, 42 S.W.3d 44, 55 (Tenn. 2001)(citing <u>Franklin</u>, Supreme Court "has held that there is no constitutional right to have residual doubt considered as a mitigating factor in a capital sentencing hearing").

The Supreme Court addressed this issue again in <u>Oregon v. Guzek</u>, 546 U.S. 517, 126 S. Ct. 1226 (2006), when it unanimously (8-0) vacated an Oregon Supreme Court decision overturning a capital sentence on the grounds that the Eighth Amendment mandated that the defendant be permitted to introduce new alibi evidence at a capital resentencing hearing. Although finding it unnecessary to resolve whether a constitutional right to introduce residual doubt evidence at sentencing exists, six Justices held that the evidence in question could be excluded because: 1) it concerned <u>whether</u>, not how, the defendant committed the crime; 2) the question of whether the defendant committed the basic crime <u>had been litigated</u>; and 3) the new alibi evidence was available at the original trial and defendant had an opportunity to present the "new" evidence at the earlier trial. <u>Id.</u> at 1232.

With respect to the first two rationales, the Court noted that sentencing-related evidence "tended to show *how*, not *whether*, the defendant committed the crime" and was not "directly inconsistent with the jury's finding of guilt."   Id. at 1231(emphasis in original).   The Court also stated that in a bifurcated capital case, the issue whether the defendant committed the basic crime was litigated in the guilt phase and that the proffered evidence "attacks a previously determined matter in a proceeding at which, in principle, that matter is <u>not at issue</u>" and that "[t]he law typically discourage collateral attacks of this kind."   Id. (emphasis added).

Justices Scalia and Thomas would have gone a step further in <u>Guzek</u> and "follow the Court's logic to its natural conclusion and reject all Eighth Amendment residual-doubt claims."   Id. at 1233. They agreed with the first two prongs set forth by the majority, but would have also rejected the claim that the penalty phase offers a capital defendant "a *second* opportunity . . . to litigate his innocence."   Id.   They found support for their conclusion not in the narrow path chosen by the majority opinion, but in the following rationale:

> [T]he claim we consider here finds <u>no support in our Nation's legal history and traditions</u>.   In 1986, Justice Marshall correctly observed that there had been "few times in which in any legitimacy has been given to the power of a convicted capital defendant facing the possibility of a death sentence to argue as a mitigating factor <u>the chance that he might be innocent</u>." <u>Lockhart v. McCree</u>, 476 U.S. 162, 205 . . . (dissenting opinion).   Nothing has changed on that score in

the last 20 years.  On the contrary, in <u>Franklin</u> . . . four
Members of this Court noted that our "prior decisions . . .
fail to recognize a constitutional right to have such doubts
considered as a mitigating factor." (Citation omitted)

<u>Guzek</u>, 126 S. Ct. at 1234 (emphasis added).

Although the issue in <u>Guzek</u> was narrow, the clear import of
<u>Franklin</u> and <u>Guzek</u>, taken together, is that there is no
constitutional right to rely on residual doubt as a mitigating
circumstance.

> **3.    Allowing Residual Doubt as a Mitigating Factor
>         Would Be Contrary to Basic Principles of
>         Capital Jurisprudence**

Because the death penalty is a unique sanction, this Court has
frequently emphasized that it would be unconstitutional to afford
a sentencer "unbridled discretion" in deciding whether to impose
it. <u>Penry v. Lynaugh</u>, 492 U.S. 302, 326 (1989).  That principle was
first articulated in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972)(per
curiam), which overturned the sentences of two defendants who were
sentenced under statutes that gave the jury complete discretion to
impose the death penalty.  Although each of the justices in the
<u>Furman</u> majority wrote separately, <u>Furman</u> has since come to stand
for the proposition that "the channeling and limiting of the
sentencer's discretion in imposing the death penalty is a
fundamental constitutional requirement for sufficiently minimizing
the risk of wholly arbitrary and capricious action." <u>Maynard v.
Cartwright</u>, 486 U.S. 356, 362 (1988); <u>accord</u>, <u>Gregg v. Georgia</u>, 428
U.S. 153, 188-89 (1976)(opinion of Stewart, Powell, and Stevens,

JJ.).  Consistent with the <u>Furman</u> principle, the Court has required that the trier of fact narrow the category of those eligible for the death penalty by finding at least one aggravating factor that provides reasonable justification for a more severe sentence.  <u>See</u> <u>Zant v. Stephens</u>, 462 U.S. 862, 877-78 (1983).

At the same time, in order that the sentencer in a capital case may make "an individualized determination [about punishment] on the basis of the character of the individual and the circumstances of the crime," <u>Zant</u>, 462 U.S. at 879.  The sentencer must be allowed to consider certain mitigating factors in selecting a defendant's sentence.  The concept of constitutionally required mitigating factors originated in <u>Woodson v. North Carolina</u>, 428 U.S. 280 (1976).  In the controlling opinion in <u>Woodson</u>, Justices Stewart, Powell, and Stevens determined that North Carolina's mandatory death-penalty statute was unconstitutional because, among other reasons, it "fail[ed] to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death."  <u>Id.</u> at 303.  The joint opinion concluded that "consideration of the character and record of the individual offender and the circumstances of the particular offense" was "a constitutionally indispensable part of the process of inflicting the penalty of death."  <u>Id.</u> at 304.

In <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978), a plurality of four justices elaborated on the <u>Woodson</u> joint opinion's concept of mitigating factors.  They reasoned that the <u>Woodson</u> joint opinion had left open "which facets of an offender or his offense it deemed 'relevant' in capital sentencing or what degree of consideration of 'relevant facets' it would require."  <u>Id.</u> at 604.  The plurality concluded that the Eighth Amendment "require[d] that the sentencer *** not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  <u>Id.</u>  At the same time, however, the plurality stressed that it did not intend to "limit[] the traditional authority of a court to exclude, as <u>irrelevant</u>, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."  <u>Id.</u> at 604 n.12 (emphasis added).  The plurality ultimately determined that Ohio's capital-sentencing scheme was invalid because it precluded the defendant from relying at sentencing on "[t]he absence of direct proof that the defendant intended to cause the death of the victim" or "defendant's comparatively minor role in the offense." <u>Id.</u> at 608.

In <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), a majority of the Court adopted the plurality's reasoning in <u>Lockett</u>.  After quoting the <u>Lockett</u> plurality's definition of mitigating factors, <u>Id.</u> at 110, the Court held that evidence of a defendant's difficult family

16

history and emotional disturbance constituted "relevant mitigating evidence" under that definition, Id. at 115.

None of this Court's decisions following Woodson, Lockett, and Eddings contains any indication that "residual doubt" is a constitutionally mandated sentencing factor in capital proceedings. Indeed, those cases suggest that the concept of constitutionally mandated mitigating evidence is premised on the defendant's conviction of the underlying offense, and therefore does not include evidence designed to undermine that premise.

In cases addressing various aspects of a sentencer's consideration of mitigating factors, the Court has repeatedly relied on the Lockett plurality's definition, and has never indicated that the concept of constitutionally mandated mitigating factors extends beyond that definition's two broad categories. See, e.g., McKoy v. North Carolina, 494 U.S. 433, 443 (1990)(referring to "mitigating evidence relevant to a defendant's character or record or the circumstances of the offense" (citation omitted)); Penry, 492 U.S. at 328 (stating that "jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime"); Mills v. Maryland, 486 U.S. 367, 374 (1988) (quoting Lockett plurality's definition of mitigating factors); Skipper v. South Carolina, 476 U.S. 1, 4 (1986) (same); cf. Hitchcock v. Dugger, 481 U.S. 393, 398-99 (1987) (citing Lockett and Eddings in

17

invalidating death sentence where jury was instructed not to consider non-statutory mitigating circumstances).[1]

In discussing the concept of mitigating factors generally, and in discussing the "circumstances of the offense" category of mitigating factors specifically, the Court has consistently presupposed the defendant's factual guilt, thereby foreclosing the argument that any remaining doubt as to whether the defendant committed the offense constitutes a "circumstance of the offense" for mitigation purposes. See, e.g., Blystone v. Pennsylvania, 494 U.S. 299, 305 (1990) (stating that it is "sufficient under Lockett and Penry" for sentencer to be allowed to consider "the mitigating circumstances present in the particular crime committed by the particular defendant"); Sumner v. Shuman, 483 U.S. 66, 78-79 (1987) (noting that "[t]he fact that a life-term inmate is convicted of murder does not reflect whether any circumstance existed at the time of the murder that may have lessened his responsibility for his acts even though it could not stand as a legal defense to the

---

[1]The courts of appeals have routinely upheld the exclusion of evidence that did not fall within either of the categories of mitigating factors specified by the Lockett plurality. See, e.g., Beardslee v. Wood.ford, 358 F.3d 560, 579 (9th Cir.) (evidence that co-defendants received non-capital sentences), cert. denied, 125 S.Ct. 281 (2004); Standard v. Parker, 266 F.3d 442, 461 (6th Cir. 2001) (testimony by former death-row inmate concerning death penalty generally), cert. denied, 537 U.S. 831 (2002); United States v. Johnson, 223 F.3d 665, 674-75 (7th Cir. 2000) (evidence concerning existence of maximum-security units in federal prisons), cert. denied, 534 U.S. 829 (2001).

murder charge," and adding that "the level of criminal responsibility of a person convicted of murder may vary according to the extent of that individual's participation in the crime"); cf. California v. Brown, 479 U.S. 538 (1987) (O'Connor, J., concurring) (observing that "the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime"); Skipper, 476 U.S. at 13 (Powell, J., concurring) (referring to "[e]vidence concerning the degree of the defendant's participation in the crime").

The Court has also rejected arguments that the sentencer must be allowed to consider factors other than the mitigating factors specified in Lockett and Eddings in deciding whether to impose the death penalty. In Blystone v. Pennsylvania, supra, and Boyde v. California, 494 U.S. 370 (1990), the Court upheld state sentencing schemes that required the sentencer to impose the death penalty after determining that the aggravating circumstances outweighed the mitigating circumstances. In Boyde, the Court refused to accept the proposition that "the jury must have freedom to decline to impose the death penalty even if the jury decides that the aggravating circumstances 'outweigh' the mitigating circumstances," reasoning that "there is no such constitutional requirement of unfettered sentencing discretion in the jury." Id. at 377. Similarly, in California v. Brown, supra, and Saffle v. Parks, 494 U.S. 484 (1990), the Court upheld so-called "anti-sympathy" jury

19

instructions, which advised the jury not to "be swayed by mere ***
sympathy," Brown, 479 U.S. at 539, and to "avoid any influence of
sympathy," Saffle, 494 U.S. at 487, in deciding whether to impose
the death penalty.  In Saffle, the Court dismissed the defendant's
reliance on Lockett and Eddings, reasoning that those cases held
only that "the State cannot bar relevant mitigating evidence from
being presented and considered during the penalty phase of a
capital trial," Id. at 490, and adding that "[w]hether a juror
feels sympathy for a capital defendant is more likely to depend on
that juror's own emotions than on the actual evidence regarding the
crime and the defendant," Id. at 493.

These cases reinforce the view that the concept of
constitutionally relevant mitigating evidence pre-supposes that a
capital defendant has committed a crime that exposes him to the
death penalty, and that the mitigation question is whether features
of the crime or the defendant's background or character lessen his
culpability for that crime.  See, Tennard v. Dretke, 524 U.S. 274,
124 S. Ct. 2562, 2570-72 (2004); Brown, 479 U.S. at 545 (O'Connor,
J., concurring).  That understanding of the purpose of mitigating
evidence is inconsistent with the submission that there is a right
to introduce evidence or argue or submit as a mitigator, at
sentencing, a claim that contradicts the guilt-phase jury's
conclusion that the defendant did indeed commit the offense.

4.   **Allowing Residual Doubt As A Capital Mitigator Would Be Creating a Burden of Proof Found Nowhere in the Law**

Allowing the residual doubt mitigator would improperly permit a jury, at its discretion, effectively to apply a higher standard of proof in capital cases than the "reasonable doubt" standard applied in all other criminal cases.  As a practical matter, because "residual doubt" must mean something more than a "reasonable doubt," it must amount to an unreasonable or irrational doubt - that is, a doubt based on speculation, surmise, or subjective intuition, rather than fact.  Cf. Victor v. Nebraska, 511 U.S. 1, 17 (1994) ("A fanciful doubt is not a reasonable doubt.").  One court of appeals defined the concept of "residual doubt" thus: "There may be no reasonable doubt - doubt based upon reason - and yet some genuine doubt exists.  It may reflect a mere possibility; it may be but the whimsy of one juror or several."  Smith v. Balkcom, 660 F.2d 573, 580(5th Cir. 1981), cert. denied, 459 U.S. 882 (1982).  A "mere possibility" or "whimsy" standard, however, cannot serve as a sensible basis for a jury to act.  It does nothing to channel the jury's discretion; rather, it creates a roving commission to act outside the evidence and the law.

In addition, the "reasonable doubt" standard has long been understood as "the most exacting standard of proof," Erik Lillquist, Absolute Certainty and the Death Penalty, 42 Am. Crim. L. Rev 45, 51 (2005) (Lillquist), and "proof beyond a reasonable

21

doubt" has been defined as "proof that leaves [the jury] firmly convinced of the defendant's guilt," Federal Judicial Center, Pattern Criminal Jury Instructions 28 (1988); cf. Victor, 511 U.S. at 27 (Ginsburg, J., concurring in part and concurring in the judgment) (citing pattern instruction with approval). Injecting an additional, amorphous "residual doubt" standard into capital sentencing would likely foster jury confusion and invite speculation about whether absolute certainty is required for a verdict - a standard that could well be thought to be unattainable.

Even assuming that some higher standard of proof short of absolute certainty were susceptible of precise articulation, however, there is no justification for a rule that would permit a jury to deviate from the "reasonable doubt" standard. That venerable standard dates from the founding of the Republic, see Anthony A. Morano, A Reexamination of the Development of the Reasonable Doubt Rule, 55 B.U.L. Rev. 507, 516-518 (1975) (tracing standard to Boston Massacre trials), and appears to have been developed precisely to guarantee that only the truly guilty were subjected to the death penalty, which was then available for most felonies, See Lillquist, supra, 42 Am. Crim. L. Rev. at 51; Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 2559 (Breyer, J., dissenting). The reasonable-doubt standard is designed to permit the criminal-justice system to provide strong protection for

22

a defendant's interests without imposing the paralyzing requirement of absolute certainty.  See Victor, 511 U.S. at 13-14.

Assuming arguendo that there were some reason to believe that juries in capital cases were convicting defendants despite genuine doubts that defendants were guilty, the proper solution would be to ensure that juries are properly instructed about "reasonable doubt" at the guilt phase - not to require that juries be allowed, at their discretion, to take unreasonable or irrational doubts into account at the sentencing phase.  A system that allowed juries - or even a single juror, see Mills, 486 U.S. at 384 - to invent and then apply a higher standard of proof for capital sentences would "highlight that the standard of proof in other criminal cases is lower, and thereby lead to less respect for guilty verdicts in noncapital cases," Lillquist, supra, 42 Am. Crim. L. Rev. at 67.

In Lockhart v. McCree, supra, the Supreme Court noted, quoting the dissenting opinion below, that "residual doubt has been recognized as an extremely effective argument for defendants in capital cases." 476 U.S. at 181.  In fact, studies have reached somewhat conflicting results on the efficacy of relying on "residual doubt."[2]  The Eighth Amendment, however, permits States

---

[2]Compare, e.g., William S. Geimer & Jonathan Amsterdam, Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Cases, 15 Am. J. Crim. L. 1, 28 (1988) (concluding, in study of jurors in ten cases in State that did not allow consideration of "residual doubt" as a sentencing factor, that "[t]he existence of [either 'reasonable' or 'residual'] doubt about the guilt of the accused was the most often recurring explanatory

to confine consideration of guilt and innocence to the guilt phase and to require the sentencer to focus on other considerations at the sentencing phase.

To suggest to a jury that the existence of doubt somewhere between proof beyond a reasonable doubt and absolute certainty may be a mitigating factor sends a confusing and erroneous signal to the jury that absolute certainty of defendant's guilt must exist to impose the death penalty. The Supreme Court has never held that any higher degree of certainty, other than proof beyond a reasonable doubt, must exist with respect to guilt to impose the death penalty. Guilt is determined in a capital case no differently than in a non-capital case. Proof beyond a reasonable doubt is also the standard of proof for statutory aggravators, the requisite mental state and non-statutory aggravators. No standard of proof or degree of certainty is prescribed for the jury's

---

factor" in cases in which the jury recommended life), with Scott E. Sundby, The Capital Jury and Absolution: The Intersection of Trial Strategy, Remorse and the Death Penalty, 83 Cornell L. Rev. 1557, 1577 (1998) (concluding, in study of jurors in 17 cases in which the defendant denied guilt, that "residual doubt" strategy "may actually increase the likelihood that the jury will reach a sentence of death," except to the extent that it suggests that the defendant played a minor role in a murder involving multiple actors); cf. William J. Bowers et al., Foreclosed Impartiality in Capital Sentencing: Jurors' Predispositions, Guilt-Trial Experience, and Premature Decision Making, 83 Cornell L. Rev. 1476, 1527 (1998) (noting that, in some cases, "jurors with some doubts, possibly reasonable doubts, about a capital murder verdict *** may have agreed to vote guilty of capital murder in exchange for an agreement with [other] jurors to abandon the death penalty").

weighing decision.   The question posed is simply whether the aggravating circumstances outweigh the mitigating circumstances sufficiently to justify a sentence of death.   Each juror supplies his own scale for determining the type of sentence that is just under the circumstances.

Residual doubt as a mitigating circumstance turns the capital process on its head by allowing the jury to consider something as standardless and vague as "residual doubt."   It also is contrary to the principles used to select a death-qualified jury.   If a juror during voir dire indicates that he or she could return a verdict of death for a capital crime only if guilt is proven by a standard higher than proof beyond a reasonable doubt, that juror is subject to a valid cause strike.   <u>United States v. Flores</u>, 63 F.3d 1342, 1355-56 (5th Cir. 1995); <u>United States v. Drew</u>, 964 F.2d 411, 416-17 (5th Cir. 1992), <u>cert. denied</u>, 509 U.S. 925 (1993); <u>United States v. Honken</u>, 381 F. Supp. 2d 936, 994 (N.D. Ia. 2005).

In <u>Flores</u>, the prospective juror stated that he could impose the death penalty only if there was a confession or if the juror himself had witnessed the murder.   The defendant argued that the juror was improperly struck for cause, because "'it is up to each individual citizen to judge for himself the degree of proof of guilt beyond a reasonable doubt.'" <u>Flores</u>, 63 F.3d at 1356.   The Court rejected this argument and held that the juror was properly struck because "he indicated that he would hold the government to

25

an impossible standard." Id.  In Drew, the Court also held that a juror was properly struck for indicating that he would hold the Government to a higher burden of proof than proof beyond a reasonable doubt.  These jurors could not perform their duties in accordance with the Court's instructions.

In United States v. Purkey, 428 F.3d 738 (8th Cir. 2005), the Eighth Circuit reaffirmed this principle.  In Purkey, a juror was struck for cause who answered, "I think I would," to the question of whether he would hold the Government to a higher burden of proof than required under the law.  The juror was then asked if he would hold the Government to a standard higher than proof beyond a reasonable doubt and he responded, "[i]t has to be proof without a reasonable doubt."  The defense claimed that the District Court later erred in recollecting the juror's answers incorrectly.  The Court of Appeals held that the District Court did not abuse its discretion in striking the juror or being left with the impression that the juror would hold the Government to a higher burden of proof because it involved the death penalty.  Id. at 751.  However, in so doing the Eighth Circuit clearly accepted the proposition that a juror who would hold the Government to a higher burden of proof than required by law is not an impartial juror and cannot serve.

There is a conflict between striking a juror because that juror would hold the Government to an impossible burden to select

26

a sentence of death, but then allowing a juror to consider the absence of proof which satisfies an impossible burden as a mitigating circumstance.  No matter what the evidence, even if the evidence includes a DNA match, a fingerprint match, a videotape of the offense and a tape-recorded confession, there will always be a mere possibility of innocence.  To allow a juror to treat that chance as mitigating injects an element of arbitrariness that is foreign to the American criminal justice system and imposes an impossible burden on the Government.  As Justice Scalia's concurring opinion in Guzek noted, quoting Justice Marshall, "the chance that [a capital defendant] might be innocent" has never been recognized as a legitimate mitigating factor.  Guzek, 126 S. Ct. at 1234 (Scalia, J., concurring opinion).  The reason was stated by Justice O'Connor in Franklin: "because 'residual doubt' about guilt is not a mitigating circumstance."  Franklin, 487 U.S. at 188 (O'Connor, J., concurring opinion).

Wherefore, the United States respectfully requests this Court to exclude defense evidence of the impact of a sentence of death on defendants' families (sometimes referred to as execution impact evidence); to exclude evidence relating to the ability of prisons to minimize inmate dangerousness, and prison life in general; and

to exclude the defendants' request to instruct the jury that residual doubt is a mitigating factor.

Respectfully Submitted,

CHARLES T. MILLER
United States Attorney

By:  s/R. Gregory McVey
    R. Gregory McVey Bar Number: 2511
    Attorney for the United States
    United States Attorney's Office
    300 Virginia Street East, Suite 4000
    Charleston, West Virginia 25301
    Telephone: (304) 345-2200
    Fax: (304) 347-5104
    Email: Greg.McVey@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that service of the foregoing "GOVERNMENT'S PENALTY PHASE MEMORANDUM OF LAW ON "EXECUTION IMPACT" EVIDENCE; PRISON RESTRICTIONS AND PRISON LIFE EVIDENCE; AND RESIDUAL DOUBT MITIGATING FACTOR" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 27th of April, 2010, to:

Amy L. Austin
Gerald T. Zerkin
Federal Public Defender's Office
701 E. Broad Street, Suite 3600
Richmond, VA  23219
<u>amy_austin@fd.org</u>
<u>gerald_zerkin@fd.org</u>

Brian J. Kornbrath
Federal Public Defender's Office
230 West Pike Street, Suite 360
Clarksburg, WV 26301
brian_kornbrath@fd.org

By:   <u>s/R. Gregory McVey</u>
      R. Gregory McVey Bar Number: 2511
      Attorney for the United States
      United States Attorney's Office
      300 Virginia Street East, Suite 4000
      Charleston, West Virginia 25301
      Telephone: (304) 345-2200
      Fax: (304) 347-5104
      Email: Greg.McVey@usdoj.gov